**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| JENNIFER VETRANO,<br>        *Plaintiff*,<br><br>v.<br><br>JOHN BRDA, ALLISON CHRISTILAW,<br>MBA, ICD.D B, JOHN R. HARDING, UZI<br>SASSON, DAN EATON ESQ, MAURICE<br>GUITTON, ERIC M. LESLIE, PHILIPPE<br>MORALI, KEN HANNAH, STEEN<br>KARSBO, JOHN DOES 1-20, JANE DOES 1-<br>20,<br>        *Defendants*. | **CASE NO. 7:24-CV-00325-DC-RCG** |

<u>**DEFENDANTS UZI SASSON'S AND PHILIPPE MORALI'S MOTION TO DISMISS**</u>

Pursuant to Federal Rule of Civil Procedure 12(b), Defendants Uzi Sasson and Philippe

Morali ask the Court to dismiss them from this case as they are not subject to personal jurisdiction

in Texas and Plaintiff Jennifer Vetrano ("**Plaintiff**") does not have standing to bring these claims.

Plaintiff's *pro se* Complaint is one case in a string of cases that complain about the June

2021 merger of Meta Materials Inc. ("**Meta Materials**") and Torchlight Energy Resources, Inc.

("**Torchlight**") (the "**Merger**").[1] Among other things, the Merger is the basis of an action by the

Securities and Exchange Commission ("**SEC**") against the former CEOs of Torchlight and Meta

Materials, John Brda and Georgios Palikaras. *See Securities and Exchange Commission v. Brda et

al.*, No. 24-cv-01048-SDJ (E.D. Tex., June 25, 2024). It is the basis of a putative class action. *See

Targgart v. Next Bridge Hydrocarbons, Inc. et al.*, No. 24-cv-00767 (N.D. Tex., Mar. 15, 2024).

---

[1] Torchlight and Meta Materials agreed to merge in December 2020, and the merger closed in
June 2021. The June 2021 date asserted by Plaintiff relates to a completed financing by Torchlight,
which closed a few days before the Merger closed. Nevertheless, this Motion uses the June 2021
date as the operative date as it appears to be the date being used by Plaintiff. As explained below,
Messrs. Sasson and Morali did not join Meta Materials until well after either date.

180452592.8

And almost simultaneously with this case, three other *pro se* cases complaining about the Merger were filed in the Western District of Texas. *See Willcot v. SEC, et al.*, No. 7:24-cv-317 (W.D. Tex. Dec. 6, 2024); *Spears v. SEC, et al.*, No. 7:24-cv-321 (W.D. Tex. Dec. 6, 2024); and *Pease v. SEC, et al.*, No. 7:24-cv-322 (W.D. Tex. Dec. 9, 2024).

Plaintiff is alleging many of the same things as alleged in the above cases but casting a wider net in two respects. First, Plaintiff also complains about other actions, including, for example, that certain social media influencers "distract[ed] . . . shareholders from seeking legal action" and "cyberbullied, cyberstalked or harassed the plaintiff and other shareholders . . . to interfere with any legal action." [Dkt. 3 ¶¶ 23-24] Second, Plaintiff has sought to add some additional parties. Initially, Plaintiff's Complaint named the SEC, Financial Industry Regulatory Authority ("FINRA"), and the Depository Trust & Clearing Corporation. [Dkt. 1] And while an Amended Complaint [Dkt. 3] removed those Defendants (among others), Plaintiff still casts too wide a net by naming Messrs. Sasson and Morali, despite their only connection being that they served as directors and officers of Meta Materials *months if not years after the allegations in question took place*.

Given this, the Complaint fails to state a claim against them.[2] But this motion is not focused on the merits of the lawsuit; the Court need not reach that stage as the Complaint can be dismissed for two preliminary reasons.

**First**, **the Court lacks personal jurisdiction over Messrs. Sasson and Morali.** The Complaint makes clear that Messrs. Sasson and Morali are named as defendants *only because they*

---

[2] Given that Messrs. Sasson and Morali were employed by Meta Materials *after* the allegations in question took place, and they do not otherwise have any connection to the allegations of the Complaint, they reserve the right to also move to dismiss the Complaint for failing to state a claim against them. *See* Fed. R. Civ. P. 12(c).

*are directors and officers* while simultaneously failing to identify (i) any actions they undertook with respect to the Merger or other allegations at issue, or (ii) any basis to support the notion that they are subject to personal jurisdiction in Texas. Because Messrs. Sasson and Morali are not "at home" in Texas and are not being sued based on conduct that occurred in Texas, personal jurisdiction does not exist.

**Second**, **to the extent the Court finds that it has personal jurisdiction over Messrs. Sasson and Morali, any such claim must be brought in the pending Meta Materials bankruptcy proceeding by the Trustee.** The Complaint makes clear that, to the extent Plaintiff can assert some claim that Messrs. Sasson and Morali acted improperly, the injury would have been *to Meta Materials and all the shareholders*.[3] That is a derivative claim. Meta Materials filed for Chapter 7 bankruptcy in August 2024, with a trustee appointed who has the sole right to pursue claims on behalf of Meta Materials and its creditors ("**Trustee**"), including derivative claims. *In re Meta Materials Inc.* No. 24-bk-50792 (D. Nev., Aug. 9, 2024). As such, Plaintiff lacks standing to assert any derivative claims here.

## I.    Factual Background

**The Complaint** | Across its 69 pages of allegations, broken out into 277 paragraphs, the Complaint [Dkt. 3] makes too many allegations to summarize in their entirety here, but Plaintiff's allegations generally relate to the following events. First, the Complaint alleges that in and around the time of the Merger, the CEOs of Meta Materials and Torchlight engaged in a "pump and dump" scheme.[4] [*See generally,* Dkt. 3, ¶¶ 1-22; 43-91] Second, the Complaint alleges that thereafter,

---

[3] To be clear, Messrs. Sasson and Morali dispute that there are any such claims, but whether there are such claims is clearly a decision for the Trustee and not Ms. Vetrano.

[4] These allegations are largely copied from the SEC complaint mentioned above. *See Securities and Exchange Commission v. Brda et al.*, No. 24-cv-01048-SDJ (E.D. Tex).

social media influencers engaged with shareholders online in a way that interfered with or deterred potential legal action. [*See generally*, Dkt. 3, ¶¶ 23-25; 249-252]

**Allegations Against Meta Materials' Leadership** | Against this backdrop, the allegations against Meta Materials' Leadership—and in particular Messrs. Sasson and Morali—are only stated generally. And critically to this Motion, the entirety of the allegations against Messrs. Sasson and Morali (and really all of Meta Materials' Leadership) are for injuries not specific to the Plaintiff, but instead to the shareholders generally. [*See, e.g.,* Dkt. 3, ¶¶ 255 (alleging that conduct by Meta Materials Board "directly contributed to shareholder harm" and "prolonged harm to shareholders"); 268 (alleging that conduct by the Meta Materials "Corporate Leadership . . . exacerbated investor uncertainty and financial harm")]

Also key is that the actions allegedly taken by Messrs. Sasson and Morali are exclusively for actions they took *as directors and officers of Meta Materials*, and not in their individual capacity. In fact, the Complaint contains no specific allegations of wrongdoing by Messrs. Sasson and Morali, instead only making allegations about actions taken by Meta Materials "leadership" generally.[5]   [*See, e.g.,* Dkt. 3, ¶¶ 255 (allegations against "Members of the Board"); 257 (allegations against "leadership"); 259 (same); 260 (same), 262 (same)]

**Messrs. Sasson and Morali Came After the Fact** | Messrs. Sasson's and Morali's tenure post-dates the Merger and the allegations in question. Uzi Sasson served as the CFO and COO of Meta Materials from April 2023 to November 2023, and as the President and CEO from November 2023 to August 7, 2024. [Sasson Declaration, ¶¶ 1-2] Philippe Morali served on the Board of

---

[5] And even when Messrs. Sasson and Morali are called out by name, they are listed with other former Directors and Officers evidencing that the allegations against the movants are against them for their conduct as Meta Materials' directors and officers. [*See e.g.,* Dkt. 3, ¶¶ 266 (identifying all defendants connected to Meta Materials); 268 (listing all defendants and describing them as "Corporate Leadership")]

Directors of Meta Materials from October 10, 2023 to August 7, 2024. [Morali Declaration, ¶ 1] Neither individual ever worked for Torchlight. [Sasson Declaration, ¶ 3, Morali Declaration, ¶ 2] There is no attempt in the Complaint to tie either of them to the Merger or the allegations of wrongdoing.

**There is No Meaningful Connection Between Messrs. Sasson and Morali and Texas** | The Plaintiff made no attempt to describe any connection between these two individuals and Texas or otherwise support the notion that they are subject to personal jurisdiction in Texas, and for good reason as neither Mr. Sasson nor Mr. Morali have meaningful contacts with Texas that would allow the Court to exercise jurisdiction over them.

Neither individual has significant contacts with Texas in their *personal* capacity:

- They do not live in Texas. [Sasson Declaration, ¶¶ 5-6, Morali Declaration, ¶¶ 4-5]

- They do not work in Texas. [Sasson Declaration, ¶ 7, Morali Declaration, ¶ 6]

- They do not own personal or real property in Texas. [Sasson Declaration, ¶ 8, Morali Declaration, ¶ 7]

- They do not maintain bank accounts in Texas. [Sasson Declaration, ¶ 9, Morali Declaration, ¶ 8]

- They do not conduct personal business in Texas. [Sasson Declaration, ¶ 10, Morali Declaration, ¶ 9]

- They have never entered into a contract in their individual capacity that was performable in whole or in part in Texas. [Sasson Declaration, ¶ 11, Morali Declaration, ¶ 10]

- They do not have a telephone listing in Texas. [Sasson Declaration, ¶ 12, Morali Declaration, ¶ 11]

- They have never paid real property or income taxes in Texas. [Sasson Declaration, ¶ 13, Morali Declaration, ¶ 12]

- In fact, neither of them has set foot in Texas for personal reasons since at least the

year 2000. [Sasson Declaration, ¶ 14, Morali Declaration, ¶ 13]

Nor do they have significant contacts with Texas in their *professional* capacity. Neither are social media influencers, and neither have made social media posts about Meta Materials. [Sasson Declaration, ¶ 22, Morali Declaration, ¶ 19] Mr. Morali has *never* traveled to Texas to conduct business on behalf of Meta Materials. [Morali Declaration, ¶ 14] Mr. Sasson had one interaction with Texas during his tenure with Meta Materials but it was unrelated to the allegations of the complaint. His sole interaction was to travel to Texas for two days in May 2024 to negotiate the sale of one of Meta Materials' business units, Authentix. [Sasson Declaration, ¶¶ 15-16] That sale was entirely unrelated to the conduct alleged by Plaintiff. [Sasson Declaration, ¶ 17]

This lack of professional contacts comes as no surprise given Meta Materials' corporate citizenship. Meta Materials is incorporated in Nevada and has its principal place of business in Nevada. [Sasson Declaration, ¶ 19, Morali Declaration, ¶ 16] Meta Materials does not maintain office in Texas and, historically, did not even have a registered agent for service of process in Texas. [Sasson Declaration, ¶¶ 18, 21, Morali Declaration, ¶¶ 15, 18]

## II.    Argument

### A.    The Complaint does not establish personal jurisdiction against Messrs. Sasson or Morali.

"A federal court sitting in diversity may assert jurisdiction if (1) the state's long arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the 14th Amendment to the United States Constitution." *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quotations and citation omitted). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 741 (W.D. Tex. 2023) (quoting *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019)).

The burden to establish personal jurisdiction lies with the plaintiff. *Id.* (citing *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014)). A plaintiff must prove: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair place and substantial justice." *Multidata Sys. Int'l Corp.*, 523 F.3d at 609. This analysis does not change where defendants are sued in their capacity as directors or officers of a corporation. *See id.* at *3-6. "Minimum contacts may be established through either specific or general jurisdiction." *Ragan & Massey, Inc. v. Voluntary Purchasing Groups, Inc.*, No. 4:09-CV-00039, 2009 WL 3157468, at *3 (E.D. Tex. Sept. 28, 2009). Here, because Plaintiff does not specifically allege that Messrs. Sasson and Morali had any contacts with Texas, much less the requisite minimum contacts necessary to establish either general or specific jurisdiction of this Court, the Court must dismiss Messrs. Sasson and Morali.

**No General Jurisdiction** | "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). When (as here) an individual is not domiciled in the forum state, the individual may still be subject to general personal jurisdiction if he has ties to the forum that are "so pervasive that he is 'essentially at home' there." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 323 (5th Cir. 2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A defendant's contacts with the forum need not be related to the cause of action in forums where the defendant is subject to general personal jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

Plaintiff has not tried to establish general jurisdiction over Messrs. Sasson and Morali and cannot meet her burden if she does. First, Messrs. Sasson and Morali are not domiciled in Texas.

[*See* Sasson Declaration, ¶¶ 5-6, Morali Declaration, ¶ 4-5] Both individuals reside in California. [Sasson Declaration, 5 ¶ _Morali Declaration, ¶ 4] Therefore, Plaintiff cannot establish that Messrs. Sasson and Morali are subject to general jurisdiction through domicile.

Second, Plaintiff has not and cannot allege any ties between Messrs. Sasson and Morali and the state of Texas that render either defendant "essentially at home" in Texas. *See TheHuffingtonPost.com, Inc.*, 21 F.4th at 323. As noted above, Messrs Sasson and Morali do not have any of the connections with Texas that courts generally look for when ruling that someone is "at home" in a jurisdiction. They don't live or work here; they don't own property or pay real estate or income taxes here; they do not have bank accounts here or Texas telephone numbers. [Sasson Declaration, ¶¶ 5-13, Morali Declaration, ¶¶ 4-12] There is really nothing that suggests they are at home in Texas and, thus, general personal jurisdiction does not exist.

Instead, Plaintiff merely alleges that Messrs. Sasson and Morali engaged in conduct related to their official roles as directors and officers of Meta Materials. [*See, e.g.,* Dkt. 3, ¶¶ 266 (alleging Meta Materials directors and officers "breached their fiduciary duties while they were executives"); 268 (alleging that corporate leadership is being sued "for their roles in perpetuating trading irregularities, synthetic share proliferation, and shareholder harm"); 269 (alleging that defendants "have demonstrated a pattern of negligence, misconduct, breaches of fiduciary duty, and conspiracy to commit fraud")] But Messrs. Sasson and Morali cannot be subject to general jurisdiction in Texas solely based on their actions as corporate directors and officers of Meta Materials. Even if Meta Materials were subject to general personal jurisdiction in Texas (it is not), the fiduciary-shield doctrine prevents the exercise of personal jurisdiction over corporate officers and directors based solely on acts undertaken in a defendant's corporate capacity. *Savoie v. Pritchard*, 122 F.4th 185, 191 (5th Cir. 2024); *see also Ragan & Massey, Inc.*, 2009 WL 3157468,

at \*5; *Lorenzana v. Gulf Coast Marine & Assocs., Inc.*, No. 9-09-CV-150 TJW, 2010 WL 4737424, at \*5 (E.D. Tex. Nov. 16, 2010); *Pearson v. Shriners Hosps. for Child.*, 736 F. Supp. 3d 521, 525 (S.D. Tex. 2024); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 677 (S.D. Tex. 2014).

**No Specific Jurisdiction** | Likewise, the Court lacks specific jurisdiction over Messrs. Sasson and Morali. Specific jurisdiction exists only where "the defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 661 (N.D. Tex. 2020). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84). Put simply, the plaintiff must demonstrate "a link between the defendant's contacts and the specific claim asserted." *Alexander v. Greenwood Hall, Inc.*, No. 4:18-CV-04540, 2019 WL 2913953, at \*13 (S.D. Tex. July 8, 2019).

Again, Plaintiff has not attempted to articulate any basis in her Complaint supporting the exercise of specific jurisdiction over these individuals—nor can she, given their dearth of Texas connections. Indeed, neither Messrs. Sasson nor Morali had anything to do with the Merger as they both joined Meta Materials *years after* the alleged conduct occurred. [Sasson Declaration, ¶ 4, Morali Declaration, ¶ 3] "Without some evidence to connect [Plaintiff's] allegedly tortious acts to the forum, this [C]ourt cannot exercise jurisdiction [over Messrs. Sasson and Morali]." *Ragan*, 2009 WL 3157468, at \*6.

Lastly, Plaintiff may respond that the Court has personal jurisdiction over Meta Materials and thus, by extension the Court has personal jurisdiction over these individuals since she is suing them in their capacity as corporate officers and directors of Meta Materials. But any such response

would be misguided. Courts within this Circuit have repeatedly found that specific jurisdiction over a corporation is not imputed to its officers or directors solely by virtue of their status as a corporate officers or directors. *See Alexander v. Greenwood Hall, Inc.*, No. 4:18-CV-04540, 2019 WL 2913953, at *12 (S.D. Tex. July 8, 2019) (no specific jurisdiction over corporate officers where "[d]efendants never set foot in Texas in connection with any purchased assets or alleged legal violations" and "[t]hey never directed any action toward Texas"); *Ragan*, 2009 WL 3157468, at *6 (presence at corporate board meetings in Texas in capacity as corporate director of Texas corporation insufficient to establish "purposeful availment" where there was no evidence that "[defendant's] allegedly tortious behavior occurred at or during VPG board meetings in Texas or that [defendant] directed his tortious behavior toward residents of the state of Texas"); *Paolino v. Argyll Equities, L.L.C.*, 401 F. Supp. 2d 712, 732 (W.D. Tex. 2005) (holding that court did not have specific jurisdiction over CEO of Texas limited liability company where he did not live or work in Texas had "very few contacts with Texas, and all have been business contacts for [the company]"). In fact, even if Meta Materials itself was subject to personal jurisdiction here (which Messrs. Sasson and Morali dispute), jurisdiction over its directors and officers is not a given. *See Ragan*, 2009 WL 3157468, at *4-6; *Paolino*, 401 F. Supp. 2d at 732. Rather, the constitutional requirement of minimum contacts and purposeful availment must still be met, and they are clearly not met here. *See Ragan*, 2009 WL 3157468, at *6. Indeed, there is no allegation whatsoever of any action undertaken by them in relation to the Merger and certainly no relevant actions undertaken in Texas.

As such, the Court lacks personal jurisdiction and Messrs. Sasson and Morali should be dismissed from the lawsuit.

**B.     To the extent the Complaint makes claims against Messrs. Sasson or Morali, those are derivative claims that must be brought by the Trustee in the Meta Materials bankruptcy proceeding.**

Even if the Court determined it could exercise personal jurisdiction over Messrs. Sasson and Morali, these alleged claims belong to Meta Materials, which is now solely under the control of the Trustee, meaning that Plaintiff does not have standing to pursue them.

Following a bankruptcy, derivative claims are property of the estate and may only be brought by a trustee or other representative acting on behalf of the estate. *In re Black Elk Energy Offshore Operations, LLC*, No. 15–34287, 2016 WL 4055044, at *2 (Bankr. S.D. Tex. July 26, 2016). "Such [derivative] claims are vested in the estate because their successful prosecution results in a benefit to the estate, which in turn benefits all creditors." *See In re Neighbors Legacy Holdings, Inc.*, 628 B.R. 600, 613 (Bankr. S.D. Tex. 2021). Here, all the alleged claims against Messrs. Sasson and Morali are derivative claims and therefore must be brought in the pending bankruptcy proceeding. *See In re Meta Materials Inc.*, No. 24-bk-50792 (D. Nev.).

To determine whether a claim is direct or derivative under Texas law, this Court asks "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of the recovery or other remedy (the corporation or the suing stockholders, individually)?" *Parametric Sound Corp. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 133 Nev. 417, 427 (2017) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)).[6] In making this inquiry, "the most relevant question is whether the stockholder can prevail without showing an injury to the corporation." *Shirvanian v. DeFrates*, 161 S.W.3d 102, 110 (Tex. App. 2004). And "[w]here shareholders are injured proportionately to

---

[6] Because Meta Materials is incorporated in Nevada, this Court must look to Nevada law to determine whether Plaintiff's claims are direct or derivative. *See Smith*, 407 F.3d at 38 n.1.

their share in the corporation, the claim is derivative." *Tsuru v. Kayaba*, No. CV M-08-361, 2009 WL 10694905, at *4 (S.D. Tex. Mar. 23, 2009).

Here, Plaintiff asserts that she lost the value of her investments because of actions taken by former Torchlight and Meta Materials executives, among others, to artificially inflate the value of Meta Materials stock. [*See* Dkt. 3, ¶¶ 1-25, 43-95, 249-252] Such claims against Messrs. Sasson and Morali are necessarily derivative in nature; Plaintiff "cannot prove [her] injury without proving an injury to the corporation" and all shareholders collectively. *Shirvanian*, 161 S.W.3d at 110 (finding claims for fraud, intentional misrepresentation, negligent misrepresentation, and conspiracy arising from alleged oral inducements not to sell corporate shares were derivative); *see also Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384-85 (5th Cir. 2005) (claim that corporate officers "misstate[d] [a corporation's] financial condition, thereby causing a decline in the company's share price when the truth [wa]s revealed" was derivative); *Tsuru*, 2009 WL 10694905, at *4 ("a suit for fraud that results in a decreased valued stock is a derivative action.").

Accordingly, because these alleged claims may only be initiated by the Trustee, Plaintiff lacks standing, and her Complaint must be dismissed.

### III.    Conclusion

Messrs. Sasson and Morali do not belong in this case. They came years after the Merger and there is no real attempt to tie any allegation of wrongdoing to any action they took. For now, the Court should dismiss them as they are not subject to personal jurisdiction in Texas and Plaintiff has no standing to bring these alleged claims against them. Any such claims, to the extent they exist, would need to be brought by the Trustee and in a different forum.

Dated:  March 20, 2025

Respectfully submitted,

/s/ John R. Hardin
John R. Hardin
JohnHardin@perkinscoie.com
Texas State Bar No. 24012784
**PERKINS COIE LLP**
500 N. Akard Street, Ste. 3300
Dallas, TX 75201
Telephone: (214) 965-7700
Facsimile: (214) 965-7793

*Attorney for Defendants*
UZI SASSON and PHILIPPE MORALI

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served upon all counsel of record via e-filing through the Court's CM/ECF portal on March 20, 2025.

/s/ John R. Hardin
John R. Hardin