**Exhibit A**

   



# Meta Materials Announces Update on Naked Short Selling Investigation

Topic:

**Company Update**

Monday, 20 May 2024 04:14 PM

**HALIFAX, NS / ACCESSWIRE / May 20, 2024 /** Meta Materials Inc. (the "Company" or "META") (NASDAQ:MMAT), an advanced materials and nanotechnology company, today announced an update on the short selling investigation undertaken in June of 2023.

In an initial press release from late June 2023, META outlined its preliminary analysis of ·ntial naked short selling, and retained well-known analytics firm, Shareholder Intelligence Services, LLC to review trading patterns of the Company's common stock. Based on this analysis, and with zero tolerance for illegal naked short selling and other

stock manipulation, META employed the services of law firms, Christian Attar and Warshaw Burstein (collectively "Lawyers") to determine merit of such claims.

Since June 2023, the Lawyers have conducted an exhaustive investigation and undertaken in-depth due diligence. *The Lawyers have now concluded that META has meritorious claims for market manipulation against several parties*. "I believe META has an actionable case in connection with its MMAT/MMTLP claims. We look forward to working with the company," noted James "Wes" Christian, partner with Christian Attar.

Noted META Board Chairman, Jack Harding, "We needed all available data (unearthed by these esteemed securities law firms) at our disposal to delineate stock manipulation, and by which parties. We are now equipped with the necessary information to act and will be further sharing these findings with regulatory agencies. Simultaneously, we expect to file legal proceedings in the coming quarters against the responsible financial service firms." META looks forward to releasing additional press releases as more information becomes available.

**About Meta Materials Inc.**

Meta Materials Inc. (META) is an advanced materials and nanotechnology company. We develop new products and technologies using innovative sustainable science. Advanced materials can improve everyday products that surround us, making them smarter and more sustainable. META® technology platforms enable global brands to develop new products to improve performance for customers in aerospace and defense, consumer electronics, 5G communications, batteries, authentication, automotive and clean energy. Learn more at www.metamaterial.com.



**Media and Investor Inquiries**

Investor Relations
Meta Materials Inc.
media@metamaterial.com
ir@metamaterial.com

## Forward Looking Information

This press release includes forward-looking information or statements within the meaning of Canadian securities laws and within the meaning of Section 27A of the Securities Act of 1933, as amended, Section 21E of the Securities Exchange Act of 1934, as amended, and the Private Securities Litigation Reform Act of 1995, regarding the Company, which may include, but are not limited to, statements with respect to the costs associated with the workforce reduction, the expected timing of implementing and completing the workforce reduction, and the Company's review and evaluation of potential strategic alternatives. Often but not always, forward-looking information can be identified by the use of words such as "pursuing", "potential", "predicts", "projects", "seeks", "plans", "expect", "intends", "anticipated", "believes" or variations (including negative variations) of such words and phrases, or statements that certain actions, events or results "may", "could", "should", "would" or "will" be taken, occur or be achieved. Such statements are based on the current expectations and views of future events of the management of the Company and are based on assumptions and subject to risks and uncertainties. Although the management of the Company believes that the assumptions underlying these statements are reasonable, they may prove to be incorrect. The forward-looking events and circumstances discussed may not occur and could differ materially as a result of known and unknown risk factors and uncertainties affecting the Company. For a discussion of these risks and uncertainties, and other important factors, see the section entitled "Risk Factors" in the Company's Annual Report on Form 10-K for the year ended December 31, 2024, and in subsequent filings with the Securities and Exchange Commission ("SEC"), as well as discussions of potential risks, uncertainties and other important factors in the Company's subsequent filings with the SEC. Forward-looking statements speak only as of the date on which they are made and the Company does not undertake any obligation to publicly update or revise any forward-looking statement, whether as a result of new information, future events, or otherwise, except to the extent required by law.

**SOURCE:** Meta Materials Inc.

## Solutions

Public Companies

Private Companies

Agencies

Legal

Resellers & Market Research

## Public Relations Products

Access PR Platform

Press Release Distribution

Media Database

Media Pitching

Media Monitoring

Media and Industry Targeting

## Investor Relations Products

Access IR Platform

IR Website

ADA Compliance

Earnings Calls

Earnings Press Releases

Investor Days

## All Access

All Access

Conference & Event Software

## Professional Services

Service Plans

Platform Add-ons

## Blogs

Press Release Topics

Media Outreach & Engagement Optimization

Competitor Comparisons

IR Websites Best Practices

Earnings Call Checklists & Procedures

Earnings Press Release Tips

Investor Day Recommendations

## Resources

Press Release Templates

Press Release Examples

## FAQs

Product

Platform

Company

## About Us

Who We Are

Meet the Team

Investor Relations

Careers

## Contact Us

+1 888-808-2227

Sales

Customer Support

Editorial

Billing Contact

Distribution Partner Inquiry

## Subscribe to Our Newsletter

Email*

Press Release Topics

**Please Select**



Submit

©2025 ACCESS Newswire Inc. All rights reserved.  Privacy Policy  |  Terms of Service

**Exhibit B**

# Next Bridge Hydrocarbons Announces Engaging Christian Attar Law Firm

NEWS PROVIDED BY
**Next Bridge Hydrocarbons, Inc. ➞**
Feb 18, 2025, 09:00 ET

MIDLAND, Texas, Feb. 18, 2025 /PRNewswire/ -- **Next Bridge Hydrocarbons, Inc.** ("Next Bridge," "our," "we," or the "Company"), an oil and natural gas exploration and production company with interests in Texas, Louisiana, and Oklahoma announced today the following:

The Company is pleased to announce engaging the services of the Houston-based law firm Christian Attar. Christian Attar has been engaged to explore and investigate any and all potential claims related to harassment, business disparagement, libel, slander, tortious interference, conspiracy, obstruction of justice and violations of the Administrative Procedures Act. The Company will be working closely with founding partner James "Wes" Christian, whom we believe is the best candidate for investigating such potential claims given his expertise in this area of litigation.

As stated in prior press releases, the Company has become aware of shareholder ledger imbalances at several brokerage firms totaling amounts exceeding the aggregate 2.65 million share short interest position in MMTLP stated publicly by FINRA. The Company wishes to reiterate that after more than two years, we have yet to uncover the full magnitude of these imbalances. This is in spite of multiple attempts to recruit assistance from overseeing Regulators.

Chairman and CEO Greg McCabe stated, "We are excited by these latest additions to our growing advisory team. Working with Wes Christian, a seasoned and highly successful litigator and an expert well-versed in our story from the beginning, marks the dawning of a new era for our legal campaign. We will not stand by

as nefarious actors with hidden agendas spread misinformation regarding our Company, our business activities or our personnel. Our patient and loyal shareholders deserve us to protect the integrity of both Next Bridge and their investment in it, and I want to truly thank once again our online community, the MMTLP ARMY, for their long-standing support and steadfast dedication."

**About Next Bridge Hydrocarbons, Inc.**

The Company is an independent public reporting energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States. We have minor well interests in the Eastern edge of the Midland Basin in Texas, two minor well interests in Oklahoma and exploration prospect leaseholds in onshore south Louisiana. Please visit **www.nextbridgehydrocarbons.com** for more information.

Next Bridge is a private company insofar as its common stock is not traded on a public stock exchange of any kind. The Company is expected to update shareholders about certain operational and financial matters related to Company business. To receive emails regarding this, visit **https://www.nextbridgehydrocarbons.com/investors** and complete the Email Alert / Investor Form. You may also choose to follow our social media channels at @nbhydrocarbons on X (formerly Twitter) and "Next Bridge Hydrocarbons" on LinkedIn.

This statement may contain "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995. Such statements are based on management's current expectations and are subject to a number of factors and uncertainties which could cause actual results to differ materially from those described herein. Although the Company believes the expectations in such statements to be reasonable, there can be no assurance that such expectations will prove to be correct. Information concerning the assumptions, uncertainties and risks that may affect the actual results can be found in the Company's filings with the Securities and Exchange Commission ("SEC") available on the Company's website or the SEC's website at **www.sec.gov**.

Investor Relations Contact:
Dennard Lascar Investor Relations
**NextBridge@dennardlascar.com**

SOURCE Next Bridge Hydrocarbons, Inc.

WANT YOUR COMPANY'S NEWS

# FEATURED ON PRNEWSWIRE.COM?

# GET STARTED

**440k+**
**Newsrooms &**
**Influencers**

**9k+**
**Digital Media**
**Outlets**

**270k+**
**Journalists**
**Opted In**

**Exhibit C**

 Gmail

Jennifer Vetrano <jvetrano999@gmail.com>

---

**ethics complaint against James Wes Christian**
1 message

---

Jennifer Vetrano <JVetrano@opko.com>                                                                Sat, Mar 8, 2025 at 6:54 PM
To: "stephanie.lowe@texasbar.com" <stephanie.lowe@texasbar.com>
Cc: Jennifer Vetrano <jvetrano999@gmail.com>

Hi Stephanie,

Can you please help me?  I am not sure who exactly to email in Texas for a complaint against a Texas attorney?  Thank you.

**Complaint to the State Bar of Texas**

Complainant Information:

Jennifer Vetrano

25 Pond Hollow Lane, West Creek, NJ 08092

Jvetrano999@gmail.com

Attorney Information:

James Wes Christian

1177 West Loop South, Suite 1700, Houston, TX 77027

Phone: 713-659-7617

Subject: Ethical Violations Related to Overly Broad and Burdensome Litigation Hold Notice, Significant Conflict of Interest, Improper Representation, and Potential Impropriety

Date: March 8, 2025

Introduction:

This complaint is filed to report potential ethical violations by Attorney James Wes Christian, arising from a litigation hold notice dated March 4, 2025, concerning MMTLP. The notice contains discovery requests that are excessively broad, burdensome, and potentially violative of Texas Rules of Civil Procedure, as well as ethical obligations. Furthermore, James Wes Christian is currently working with the Meta Materials bankruptcy case, and the Meta Materials Board of Directors is included as a party in my Pro se court case (Case number 7:24-CV-325). This direct and ongoing representation of a party involved in my litigation, especially in the context of bankruptcy proceedings, creates a severe and undeniable conflict of interest. Additionally, it has come to my attention that James Wes Christian is paying stock promoters, such as Gary Valinoti (known as "Ham the ShortKiller" on social media), $300 per hour for "consulting," which raises serious questions about potential impropriety.

Statement of Facts:

Overly Broad Discovery Requests:

On March 4, 2025, I received a litigation hold notice from Mr. Christian demanding "all documents" related to MMTLP, without specifying the subject matter or timeframe.

This demand violates Texas Rule of Civil Procedure 192.3(a), which requires discovery requests to be proportional and relevant. See In re Nat'l Lloyds Ins. Co., 532 S.W.3d 814, 820 (Tex. App.—Corpus Christi–Edinburg 2017, orig. proceeding) ("A request for 'all documents'…is overly broad."). See also In re Alford Chevrolet-Geo, 997 S.W.2d 173, 181 (Tex. 1999) (emphasizing the need for reasonable particularity in discovery requests).

The request for records dating back to 2018, when I acquired MMTLP shares in late 2022, is particularly egregious and appears to be a "fishing expedition." See In re CSX Corp., 124 S.W.3d 149, 152 (Tex. 2003) (holding that discovery requests must be reasonably tailored).

Lack of Specificity and Vague Definitions:

The notice contains numerous vague terms, such as "activity log," "audit compliance," and "relevant to the claim," without providing clear definitions.

This lack of specificity violates Texas Rule of Civil Procedure 192.3(b), which requires specific and particularized requests. See Loftin v. Martin, 776 S.W.2d 145, 148 (Tex. 1989) (emphasizing the importance of specificity in discovery). See also In re Am. Optical Corp. Prods. Liab. Litig., 165 S.W.3d 449, 454 (Tex. App.—Corpus Christi 2005, orig. proceeding) (holding that a request for "all documents relating to" a particular subject is overly broad).

Invasion of Privacy and Chilling Effect on Free Speech:

The requests for social media information and "reports, complaints, or moderation actions on X" raise significant privacy concerns and potentially infringe on First Amendment rights.

This is a violation of the Texas Constitution art. I, § 19. See Industrial Found. of the South v. Texas Indus. Accident Bd., 540 S.W.2d 668, 682 (Tex. 1976) (recognizing a constitutional right to privacy).

Potential Harassment and Intimidation:

As a pro se plaintiff in Case No. 7:24-CV-325, I perceive the litigation hold notice as potentially retaliatory and an attempt to intimidate or interfere with my lawsuit.

I have reason to believe that Mr. Christian has preexisting relationships with those named in my lawsuit, creating a conflict of interest.

This may violate Texas Rule of Civil Procedure 191.3, which prohibits discovery abuse. See Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992) (recognizing the potential for discovery abuse).

Undue Financial Burden:

As a pro se litigant and single parent, the requests for forensically qualified images and data from Access or Oracle databases place an undue financial burden on myself. See Tex. R. Civ. P. 192.4 (allowing objections based on undue burden and expense); In re Deere & Co., 299 S.W.3d 819, 821 (Tex. 2009) (recognizing that discovery costs can be a factor in determining proportionality).

Direct and Ongoing Conflict of Interest Through Representation of Meta Materials in Bankruptcy:

James Wes Christian is currently working with the Meta Materials bankruptcy case.

The Meta Materials Board of Directors is included as a party in my pending court case, 7:24-CV-325.

This direct and ongoing representation of a party involved in my litigation, especially in the context of bankruptcy proceedings, creates a severe and undeniable conflict of interest. Mr. Christian's ability to provide impartial representation is fundamentally compromised.

Potential Conflict of Interest Due to Prior Representation:

It has come to my attention that James Wes Christian has represented John Brda in matters related to Flamethrower and Meta Materials.

John Brda is a person named in my Pro se lawsuit.

This prior representation creates a clear conflict of interest, as Mr. Christian's current actions may be influenced by his past relationship with Mr. Brda. This conflict compromises his ability to provide impartial representation.

This is a violation of the Texas Disciplinary Rules of Professional Conduct regarding conflicts of interest.

Potential Impropriety Through Payments to Stock Promoters:

It has come to my attention that James Wes Christian is paying stock promoters, such as Gary Valinoti (known as "Ham the ShortKiller" on social media), $300 per hour for "consulting."

This raises serious questions about potential impropriety and whether these payments are being made to influence public perception or manipulate stock prices.

Rules of Professional Conduct Violated:

Texas Disciplinary Rules of Professional Conduct, specifically rules related to:

Rule 3.04: Abuse of Discovery

Rule 4.04: Respect for Rights of Third Persons.

Rule 1.06: Conflict of Interest: General Rule.

Rules pertaining to reasonable discovery.

Rules pertaining to improper representation.

Rules pertaining to conduct prejudicial to the administration of justice.

Relief Sought:

I request that the State Bar of Texas investigate these potential ethical violations, including the severe and ongoing conflict of interest arising from Mr. Christian's representation of Meta Materials in bankruptcy, the conflict of interest arising from Mr. Christian's prior representation of John Brda, and the potential impropriety related to payments to stock promoters, and take appropriate disciplinary action against Attorney James Wes Christian.

Supporting Documentation:

1. Copy of the litigation hold notice dated March 4, 2025.
2. Copy of the objection letter sent to Mr. Christian.
3. Any documentation that you have that shows James Wes Christian represented John Brda in Flamethrower or Meta Materials matters.
4. Any documentation that shows James Wes Christian is working with the Meta Materials bankruptcy case.
5. Case number 7:24-CV-325 complaint.
6. Utube video that shows James Wes Christian is paying stock influencer, "Ham the Shortkiller" Gary Valinoti $300 per hour on the Utube channel of William P. Farrand, dated September 29, 2023, disclosed by Gary Valinoti during the video.

If you have any further information for me please feel free to reach out.  My email is jvetrano999@gmail.com and phone 908-783-0105.

## Complaint to the State Bar of Texas

Complainant Information:


Jennifer Vetrano

25 Pond Hollow Lane, West Creek, NJ 08092

Jvetrano999@gmail.com


Attorney Information:

James Wes Christian

1177 West Loop South, Suite 1700, Houston, TX 77027

Phone: 713-659-7617


Subject: Ethical Violations Related to Overly Broad and Burdensome Litigation Hold Notice, Significant Conflict of Interest, Improper Representation, and Potential Impropriety


Date: March 8, 2025


Introduction:

This complaint is filed to report potential ethical violations by Attorney James Wes Christian, arising from a litigation hold notice dated March 4, 2025, concerning MMTLP. The notice contains discovery requests that are excessively broad, burdensome, and potentially violative of Texas Rules of Civil Procedure, as well as ethical obligations. Furthermore, James Wes Christian is currently working with the Meta Materials bankruptcy case, and the Meta Materials Board of Directors is included as a party in my Pro se court case (Case number 7:24-CV-325). This direct and ongoing representation of a party involved in my litigation, especially in the context of bankruptcy proceedings, creates a severe and undeniable conflict of interest. Additionally, it has come to my attention that James Wes Christian is paying stock promoters, such as Gary Valinoti (known as "Ham the ShortKiller" on social media), $300 per hour for "consulting," which raises serious questions about potential impropriety.

Statement of Facts:


Overly Broad Discovery Requests:

On March 4, 2025, I received a litigation hold notice from Mr. Christian demanding "all documents" related to MMTLP, without specifying the subject matter or timeframe.

This demand violates Texas Rule of Civil Procedure 192.3(a), which requires discovery requests to be proportional and relevant. See In re Nat'l Lloyds Ins. Co., 532 S.W.3d 814, 820 (Tex. App.—Corpus Christi–Edinburg 2017, orig. proceeding) ("A request for 'all documents'…is overly broad."). See also In re Alford Chevrolet-Geo, 997 S.W.2d 173, 181 (Tex. 1999) (emphasizing the need for reasonable particularity in discovery requests).

The request for records dating back to 2018, when I acquired MMTLP shares in late 2022, is particularly egregious and appears to be a "fishing expedition." See In re CSX Corp., 124 S.W.3d 149, 152 (Tex. 2003) (holding that discovery requests must be reasonably tailored).

Lack of Specificity and Vague Definitions:

The notice contains numerous vague terms, such as "activity log," "audit compliance," and "relevant to the claim," without providing clear definitions.

This lack of specificity violates Texas Rule of Civil Procedure 192.3(b), which requires specific and particularized requests. See Loftin v. Martin, 776 S.W.2d 145, 148 (Tex. 1989) (emphasizing the importance of specificity in discovery). See also In re Am. Optical Corp. Prods. Liab. Litig., 165 S.W.3d 449, 454 (Tex. App.—Corpus Christi 2005, orig. proceeding) (holding that a request for "all documents relating to" a particular subject is overly broad).

Invasion of Privacy and Chilling Effect on Free Speech:

The requests for social media information and "reports, complaints, or moderation actions on X" raise significant privacy concerns and potentially infringe on First Amendment rights.

This is a violation of the Texas Constitution art. I, § 19. See Industrial Found. of the South v. Texas Indus. Accident Bd., 540 S.W.2d 668, 682 (Tex. 1976) (recognizing a constitutional right to privacy).

Potential Harassment and Intimidation:

As a pro se plaintiff in Case No. 7:24-CV-325, I perceive the litigation hold notice as potentially retaliatory and an attempt to intimidate or interfere with my lawsuit.

I have reason to believe that Mr. Christian has preexisting relationships with those named in my lawsuit, creating a conflict of interest.

This may violate Texas Rule of Civil Procedure 191.3, which prohibits discovery abuse. See Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992) (recognizing the potential for discovery abuse).

Undue Financial Burden:

As a pro se litigant and single parent, the requests for forensically qualified images and data from Access or Oracle databases place an undue financial burden on myself. See Tex. R. Civ. P. 192.4 (allowing objections based on undue burden and expense); In re Deere & Co., 299 S.W.3d 819, 821 (Tex. 2009) (recognizing that discovery costs can be a factor in determining proportionality).

Direct and Ongoing Conflict of Interest Through Representation of Meta Materials in Bankruptcy:

James Wes Christian is currently working with the Meta Materials bankruptcy case.

The Meta Materials Board of Directors is included as a party in my pending court case, 7:24-CV-325.

This direct and ongoing representation of a party involved in my litigation, especially in the context of bankruptcy proceedings, creates a severe and undeniable conflict of interest. Mr. Christian's ability to provide impartial representation is fundamentally compromised.

Potential Conflict of Interest Due to Prior Representation:

It has come to my attention that James Wes Christian has represented John Brda in matters related to Flamethrower and Meta Materials.

John Brda is a person named in my Pro se lawsuit.

This prior representation creates a clear conflict of interest, as Mr. Christian's current actions may be influenced by his past relationship with Mr. Brda. This conflict compromises his ability to provide impartial representation.

This is a violation of the Texas Disciplinary Rules of Professional Conduct regarding conflicts of interest.

Potential Impropriety Through Payments to Stock Promoters:

It has come to my attention that James Wes Christian is paying stock promoters, such as Gary Valinoti (known as "Ham the ShortKiller" on social media), $300 per hour for "consulting."

This raises serious questions about potential impropriety and whether these payments are being made to influence public perception or manipulate stock prices.

Rules of Professional Conduct Violated:

Texas Disciplinary Rules of Professional Conduct, specifically rules related to:

Rule 3.04: Abuse of Discovery

Rule 4.04: Respect for Rights of Third Persons.

Rule 1.06: Conflict of Interest: General Rule.

Rules pertaining to reasonable discovery.

Rules pertaining to improper representation.

Rules pertaining to conduct prejudicial to the administration of justice.

Relief Sought:

I request that the State Bar of Texas investigate these potential ethical violations, including the severe and ongoing conflict of interest arising from Mr. Christian's representation of Meta Materials in bankruptcy, the conflict of interest arising from Mr. Christian's prior representation of John Brda, and the potential impropriety related to payments to stock promoters, and take appropriate disciplinary action against Attorney James Wes Christian.

Supporting Documentation:

1) Copy of the litigation hold notice dated March 4, 2025.
2) Copy of the objection letter sent to Mr. Christian.
3) Any documentation that you have that shows James Wes Christian represented John Brda in Flamethrower or Meta Materials matters.
4) Any documentation that shows James Wes Christian is working with the Meta Materials bankruptcy case.
5) Case number 7:24-CV-325 complaint

6) Utube video that shows James Wes Christian is paying stock influencer, "Ham the Shortkiller" Gary Valinoti $300 per hour on the Utube channel of William P. Farrand, dated September 29, 2023, disclosed by Gary Valinoti during the video.

If you have any further information for me please feel free to reach out.  My email is jvetrano999@gmail.com and phone 908-783-0105.


Sincerely,


Jennifer Vetrano

 Gmail

Jennifer Vetrano <jvetrano999@gmail.com>

---

**ethics complaint against James Wes Christian**
1 message

**Jennifer Vetrano <JVetrano@opko.com>**
To: "stephanie.lowe@texasbar.com" <stephanie.lowe@texasbar.com>
Cc: Jennifer Vetrano <jvetrano999@gmail.com>

Sat, Mar 8, 2025 at 6:54 PM

Hi Stephanie,

Can you please help me?  I am not sure who exactly to email in Texas for a complaint against a Texas attorney?  Thank you.

**Complaint to the State Bar of Texas**

Complainant Information:

Jennifer Vetrano

25 Pond Hollow Lane, West Creek, NJ 08092

Jvetrano999@gmail.com

Attorney Information:

James Wes Christian

1177 West Loop South, Suite 1700, Houston, TX 77027

Phone: 713-659-7617

Subject: Ethical Violations Related to Overly Broad and Burdensome Litigation Hold Notice, Significant Conflict of Interest, Improper Representation, and Potential Impropriety

Date: March 8, 2025

Introduction:

This complaint is filed to report potential ethical violations by Attorney James Wes Christian, arising from a litigation hold notice dated March 4, 2025, concerning MMTLP. The notice contains discovery requests that are excessively broad, burdensome, and potentially violative of Texas Rules of Civil Procedure, as well as ethical obligations. Furthermore, James Wes Christian is currently working with the Meta Materials bankruptcy case, and the Meta Materials Board of Directors is included as a party in my Pro se court case (Case number 7:24-CV-325). This direct and ongoing representation of a party involved in my litigation, especially in the context of bankruptcy proceedings, creates a severe and undeniable conflict of interest. Additionally, it has come to my attention that James Wes Christian is paying stock promoters, such as Gary Valinoti (known as "Ham the ShortKiller" on social media), $300 per hour for "consulting," which raises serious questions about potential impropriety.

Statement of Facts:

Overly Broad Discovery Requests:

On March 4, 2025, I received a litigation hold notice from Mr. Christian demanding "all documents" related to MMTLP, without specifying the subject matter or timeframe.

This demand violates Texas Rule of Civil Procedure 192.3(a), which requires discovery requests to be proportional and relevant. See In re Nat'l Lloyds Ins. Co., 532 S.W.3d 814, 820 (Tex. App.—Corpus Christi–Edinburg 2017, orig. proceeding) ("A request for 'all documents'…is overly broad."). See also In re Alford Chevrolet-Geo, 997 S.W.2d 173, 181 (Tex. 1999) (emphasizing the need for reasonable particularity in discovery requests).

The request for records dating back to 2018, when I acquired MMTLP shares in late 2022, is particularly egregious and appears to be a "fishing expedition." See In re CSX Corp., 124 S.W.3d 149, 152 (Tex. 2003) (holding that discovery requests must be reasonably tailored).

Lack of Specificity and Vague Definitions:

The notice contains numerous vague terms, such as "activity log," "audit compliance," and "relevant to the claim," without providing clear definitions.

This lack of specificity violates Texas Rule of Civil Procedure 192.3(b), which requires specific and particularized requests. See Loftin v. Martin, 776 S.W.2d 145, 148 (Tex. 1989) (emphasizing the importance of specificity in discovery). See also In re Am. Optical Corp. Prods. Liab. Litig., 165 S.W.3d 449, 454 (Tex. App.—Corpus Christi 2005, orig. proceeding) (holding that a request for "all documents relating to" a particular subject is overly broad).

Invasion of Privacy and Chilling Effect on Free Speech:

The requests for social media information and "reports, complaints, or moderation actions on X" raise significant privacy concerns and potentially infringe on First Amendment rights.

This is a violation of the Texas Constitution art. I, § 19. See Industrial Found. of the South v. Texas Indus. Accident Bd., 540 S.W.2d 668, 682 (Tex. 1976) (recognizing a constitutional right to privacy).

Potential Harassment and Intimidation:

As a pro se plaintiff in Case No. 7:24-CV-325, I perceive the litigation hold notice as potentially retaliatory and an attempt to intimidate or interfere with my lawsuit.

I have reason to believe that Mr. Christian has preexisting relationships with those named in my lawsuit, creating a conflict of interest.

This may violate Texas Rule of Civil Procedure 191.3, which prohibits discovery abuse. See Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992) (recognizing the potential for discovery abuse).

Undue Financial Burden:

As a pro se litigant and single parent, the requests for forensically qualified images and data from Access or Oracle databases place an undue financial burden on myself. See Tex. R. Civ. P. 192.4 (allowing objections based on undue burden and expense); In re Deere & Co., 299 S.W.3d 819, 821 (Tex. 2009) (recognizing that discovery costs can be a factor in determining proportionality).

Direct and Ongoing Conflict of Interest Through Representation of Meta Materials in Bankruptcy:

James Wes Christian is currently working with the Meta Materials bankruptcy case.

The Meta Materials Board of Directors is included as a party in my pending court case, 7:24-CV-325.

This direct and ongoing representation of a party involved in my litigation, especially in the context of bankruptcy proceedings, creates a severe and undeniable conflict of interest. Mr. Christian's ability to provide impartial representation is fundamentally compromised.

Potential Conflict of Interest Due to Prior Representation:

It has come to my attention that James Wes Christian has represented John Brda in matters related to Flamethrower and Meta Materials.

John Brda is a person named in my Pro se lawsuit.

This prior representation creates a clear conflict of interest, as Mr. Christian's current actions may be influenced by his past relationship with Mr. Brda. This conflict compromises his ability to provide impartial representation.

This is a violation of the Texas Disciplinary Rules of Professional Conduct regarding conflicts of interest.

Potential Impropriety Through Payments to Stock Promoters:

It has come to my attention that James Wes Christian is paying stock promoters, such as Gary Valinoti (known as "Ham the ShortKiller" on social media), $300 per hour for "consulting."

This raises serious questions about potential impropriety and whether these payments are being made to influence public perception or manipulate stock prices.

Rules of Professional Conduct Violated:

Texas Disciplinary Rules of Professional Conduct, specifically rules related to:

Rule 3.04: Abuse of Discovery

Rule 4.04: Respect for Rights of Third Persons.

Rule 1.06: Conflict of Interest: General Rule.

Rules pertaining to reasonable discovery.

Rules pertaining to improper representation.

Rules pertaining to conduct prejudicial to the administration of justice.

Relief Sought:

I request that the State Bar of Texas investigate these potential ethical violations, including the severe and ongoing conflict of interest arising from Mr. Christian's representation of Meta Materials in bankruptcy, the conflict of interest arising from Mr. Christian's prior representation of John Brda, and the potential impropriety related to payments to stock promoters, and take appropriate disciplinary action against Attorney James Wes Christian.

Supporting Documentation:

1. Copy of the litigation hold notice dated March 4, 2025.
2. Copy of the objection letter sent to Mr. Christian.
3. Any documentation that you have that shows James Wes Christian represented John Brda in Flamethrower or Meta Materials matters.
4. Any documentation that shows James Wes Christian is working with the Meta Materials bankruptcy case.
5. Case number 7:24-CV-325 complaint
6. Utube video that shows James Wes Christian is paying stock influencer, "Ham the Shortkiller" Gary Valinoti $300 per hour on the Utube channel of William P. Farrand, dated September 29, 2023, disclosed by Gary Valinoti during the video.

If you have any further information for me please feel free to reach out.  My email is jvetrano999@gmail.com and phone 908-783-0105.

Sincerely,

Jennifer Vetrano

**Jennifer Vetrano**

Associate Manager, Major Accounts

786-918-9254    •    908-783-0105

phone                        mobile

Jvetrano@opko.com

email





4400 Biscayne Boulevard, Miami, FL 33137 USA          www.opko.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION AND ANY ATTACHMENTS HERETO IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE ADDRESSEE(S). IF THE READER OF THIS MESSAGE IS NOT AN INTENDED RECIPIENT, OR AN AGENT THEREOF, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION OR ANY ATTACHMENT HERETO IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS MESSAGE IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY E-MAIL, AND DELETE THE ORIGINAL MESSAGE..

7 attachments

**wesflamethrower1.jpg**
487K

**wesflamethrower2.jpg**
225K



**wesflamethrower3.jpg**
289K



**metahireswes.jpg**
618K

**FinalJamesW.Christianletter.docx**
22K

**responsetoWChristian.docx**
25K

**amendedcomplant.pdf**
4129K



# CHRISTIANATTAR

**James W. Christian**
*jchristian@christianattarlaw.com*

February 28, 2025

***Via FedEx: 772400770336***
***Via Certified Mail Return Receipt: 9589 0710 5270 2796 8701 85***
***Via Regular Mail***
Jennifer Vetrano
25 Pond Hollow Ln
West Creek, NJ. 08092

Re:     Pre-Litigation Document Preservation Related to Potential Claims Involving Next Bridge
        Hydrocarbons, Inc.

## DEMAND FOR PRESERVATION OF ELECTRONICALLY STORED INFORMATION

To Whom it May Concern:

The undersigned has been retained as litigation counsel by Next Bridge Hydrocarbons, Inc. (hereinafter "Plaintiff" or "NBH") to investigate and commence litigation against all parties who have engaged in a scheme of harassment, business disparagement, libel, slander, tortious interference, conspiracy, obstruction of justice and violations of the Administrative Procedures Act. We write to advise Jennifer Vetrano that litigation is being considered against certain individuals with respect to this matter. You may become a party or witness in this dispute and therefore, you have an obligation to preserve all documents and electronically stored information ("ESI," as further defined below) that may relate in any way to the subject matter of this dispute (the "Claims").

We hereby request that you, individually, or on behalf of any entities you control ("You") preserve all documents, tangible things, and electronically stored information potentially relevant to the Claims such as documents, communications, and any other relevant materials including but not limited to:

1.  All communications (emails, text messages, internal messaging systems, etc.) regarding NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

2.  All Twitter (now X) data, including but not limited to:

Jennifer Vetrano
February 28, 2025
Page 2

- Direct messages (sent and received) related to NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

- Public and private posts, tweets, replies, retweets, and quote tweets referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

- Account activity logs referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

- Any reports, complaints, or moderation actions related to content involving referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

3. Any third-party communications (including correspondence with regulators or law enforcement) mentioning Plaintiff referencing NBH (including its board members, directors, officers, employees or agents) or Gregory McCabe

4. Metadata and logs associated with the above records, including timestamps, authorship, and any modifications

You should anticipate that files and much of the information relevant to Plaintiff's Claims are stored on your computers and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored on a computer, hard drive, cell phone, flash drive, CD, DVD or other electronic storage device as:

- Digital communications (e.g., e-mail, voice mail, text messaging, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., WAV and .MP3 files);
- Space Call Recordings;
- Webinars Recording;
- Podcasts Recordings;
- Video and Animation (e.g., AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;

---



Jennifer Vetrano
February 28, 2025
Page 3

- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas that may not reasonably be accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if it does not anticipate having to produce such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary for Plaintiff to determine the nature and extent of any claims.

**Preservation Requires Immediate Intervention**

You must act immediately to preserve potentially relevant ESI including, without limitation, information from January 1, 2018 to present.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI.

**Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents, files, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your devices that, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and
- Executing drive or file defragmentation or compression programs.

Jennifer Vetrano
February 28, 2025
Page 4

**Guard Against Deletion**

You should anticipate that others may seek to hide, destroy, or alter ESI and act to prevent or guard against such actions. Especially where devices have been used for Internet access or personal communications, You should anticipate that users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you. It is simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging**

You should take affirmative steps to prevent anyone with access to its data and archives from seeking to modify, destroy, or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

With respect to your hard drives and storage devices, the demand is made that you immediately obtain, authenticate, and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by you during the period from January 1, 2018 to present, as well as recording and preserving the system time and date of each such computer:

- Any Agents, Partners, or Collaborators of you concerning matters of NBH or its Officers, Directors, Shareholders, or Agents, including but not limited to Greg McCabe.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

The term "computer" shall include any computer, hard drive, cell phone, flash drive, CD, DVD, or other devices capable of storing ESI.

**Preservation in Native Form**

You should anticipate that certain ESI, including but not limited to Word documents, spreadsheets, and databases, will be sought in the form or forms in which it is ordinarily

Jennifer Vetrano
February 28, 2025
Page 5

maintained. Accordingly, You should preserve ESI in such native forms, and it should not select methods to preserve ESI that remove or degrade the ability to search its ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation.

You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible

**Metadata**

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino, G-mail) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downloaded or must be online 24/7. If you question whether the preservation method it pursues is one that we will accept as sufficient, please call us to discuss it.

**Home Systems, Laptops, Online Accounts and Other ESI Venues**

Though we expect that You will act swiftly to preserve data on all devices, it should also determine if any home or portable systems may contain potentially relevant data. To the extent that you sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and your PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if you used online or browser-based e-mail accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

Jennifer Vetrano
February 28, 2025
Page 6

**Ancillary Preservation**

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI.

You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

**Agents, Attorneys and Third Parties**

Your preservation obligation extends beyond ESI in its care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, You must notify any current or former representative, agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and it must take reasonable steps to secure its compliance.

**System Sequestration or Forensically Sound Imaging**

We suggest that, You, removing your ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

In the event You deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

Jennifer Vetrano
February 28, 2025
Page 7

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols**

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if it will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol it intends to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If You do not currently have such expertise at its disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics.

**Do Not Delay Preservation**

I am available to discuss reasonable preservation steps; however, You should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which Plaintiff is entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**Confirmation of Compliance**

Please confirm as soon as practically possible and no later than March 14, 2025, that You have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If You have not undertaken the steps outlined above, or have taken other actions, please describe what it has done to preserve potentially relevant evidence.

Sincerely,

James Wes Christian

3:48



←  **Wes Christian**



**Wes Christian**
@JWesChristian

"Justice, and only justice, you shall pursue."
Deuteronomy 16:20

5,032 Followers

**Today**



  Start a message

**Exhibit D**

← Post



**Mark R. Basile, Esq.** ✔ @BasileEsq · Apr 1, 2024
Here is my response to Marduk's deleted Tweet –

> 🧍 DŨK ⚔ ☡ @MetaGuyMarduk · 39s
> I mean, Mark is saying things that contradict what is being said by the party mentioned. I don't why he lies about dumb shit but im thankful that he does. I'm not going to argue about it. He's a predatory bully #IStandWithTheMinions ie. I stand with shareholders. #MMTLPARMY
> pic.twitter.com/MZGGhOZkOl
>
> Replying to
>
> That's actually funny – because I know the "Report" was concluded and given to META MONTHS ago. I don't represent META so I can talk about it – but Wes, unlikely cannot. A LOT of money was paid for that report and they are sitting on it – not sure what it says but there is a lot of data in it – maybe useful, maybe not. Maybe that's why nothing has been filed. Remember, even fraud has SOL periods usually running from the date its discovered. Everyone tries to discredit me – but always end up with egg on their face. IMO – Wes was told to stand down and NOT file anything. If that wasn't the case, he would – I am pretty sure he wants to too. But you aren't going to pit me against Wes. It is what it is – do you have a better explanation?

💬 3      ↻ 18      ♡ 53      📊 13K      🔖      ⬆

**Mark R. Basile, Esq,** ✔
@BasileEsq

I bet you @palikaras can confirm they had this report for months and are just sitting on it. Go ahead, ask him.

**Exhibit E**



3    7    46    2.7K

Show replies

@BasileEsq · Apr 2, 2024
@palikaras ... #MMAT ...

3    3    27    2.6K

Show replies

@ya_u_know_me · Apr 1, 2024
What's in the report...

2    2    22    3.1K

@palikaras · Apr 2, 2024
...

16    9    66    4.6K

Show replies

@DJxDK · Apr 2, 2024
...

1    310

@fearles59324823 · Apr 2, 2024
...

35

@EnergyCredit1 · Apr 2, 2024
...

5    6    1.3K

@MMAT4Life · Apr 1, 2024
Thank you @palikaras for your never ending support for your investm...
...
@BasileEsq

1    1    14    1.1K

@JamessemaJ519... · Apr 3, 2024
@palikaras ...$MMAT...

3    5    628