FILED
May 13, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: L. Mendoza
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WESTERN TEXAS**
**MIDLAND-ODESSA DIVISION**

JENNIFER VETRANO,
*Plaintiff*

v.

JOHN BRDA,
ALLISON CHRISTILAW, MBA, ICD.D B,
JOHN R. HARDING, UZI SASSON,
DAN EATON ESQ, MAURICE GUITTON,
ERIC M. LESLIE, PHILIPPE MORALI,
KEN HANNAH, STEEN KARSBO,
JOHN DOES 1-20, JANE DOES 1-20
*Defendants*.

Case No.: 7:24-CV-00325-DC-RCG

# PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER TO PREVENT IRREPARABLE HARM AND SAFEGUARD THE INTEGRITY OF THE JUDICIAL PROCESS

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS:

Plaintiff Jennifer Vetrano ("Plaintiff"), appearing pro se, urgently moves this Honorable Court for an immediate Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. The egregious and escalating conduct of James Wes Christian ("Mr. Christian"),

detailed herein, poses an imminent threat to Plaintiff's ability to fairly litigate her claims, risks the irreversible compromise of privileged information, and actively undermines the integrity of these proceedings. This motion demonstrates a clear and compelling need for this Court's swift intervention to prevent irreparable harm and ensure a just resolution.

## I. INTRODUCTION: A PATTERN OF CONFLICT, ABUSE, AND THE EROSION OF JUDICIAL INTEGRITY

This emergency motion seeks immediate protection for Plaintiff from a demonstrably conflicted attorney, Mr. Christian, who has leveraged his successive and overlapping representations within the MMTLP ecosystem to gain access to sensitive information and has engaged in a pattern of conduct that appears calculated to harass, intimidate, and defame Plaintiff, a pro se litigant pursuing claims directly related to Mr. Christian's prior and current professional engagements.

Plaintiff's lawsuit alleges serious misconduct arising from the MMTLP securities crisis. Mr. Christian's deep and multifaceted involvement with key entities at the heart of this crisis – MMAT, NBH, and Flamethrower, LLC – inherently compromises his ability to act without the appearance and very real risk of exploiting privileged information and deploying unfair tactics.

The Fifth Circuit's unwavering commitment to upholding the integrity of the judicial process mandates intervention when an attorney's conduct creates even the appearance of

impropriety or presents a risk of unfair advantage. Mr. Christian's actions far surpass a mere appearance; they constitute a tangible threat to the fairness and impartiality of these proceedings. (See In re ProEducation Int'l, Inc., 587 F.3d 296, 300 (5th Cir. 2009); United States v. Kitchin, 599 F.2d 594, 597 (5th Cir. 1979)).

## II. FACTUAL PREDICATE: A CHRONICLE OF CONFLICT AND TARGETED MISCONDUCT

The Inherently Conflicting Representation of Flamethrower, LLC: Mr. Christian's firm represented Flamethrower, LLC, an entity inextricably linked to a defendant in a related action involving Plaintiff (John Brda) and potentially controlled by NBH's CEO, Greg McCabe. This direct alignment with adverse parties creates an undeniable avenue for the misuse of information against Plaintiff. (Exhibits A-B)

Exploiting Insights from MMAT Representation: Mr. Christian's prior representation of MMAT, during which he publicly asserted the existence of significant market manipulation claims related to MMAT/MMTLP (Exhibits C-D), provided him with unique insights and potential access to privileged information directly relevant to Plaintiff's current litigation.

Deep Entanglement with NBH: Mr. Christian's firm was engaged by NBH to investigate potential claims, further embedding him within the core factual and legal landscape of the MMTLP crisis and creating a direct conflict with shareholders like Plaintiff seeking accountability from NBH and related parties. (Exhibit E)

The Trojan Horse of the Bankruptcy Proceeding: Mr. Christian's role as special counsel to the MMAT bankruptcy trustee, tasked with investigating market manipulation of both MMAT and MMTLP securities (Exhibit F), represents a profound conflict. His assertion of "disinterestedness" while simultaneously representing parties with adverse interests strains credulity and grants him unfettered access to sensitive information under the guise of fiduciary duty to the bankruptcy estate, not individual shareholders like Plaintiff. This access creates an unacceptable risk of strategic exploitation.

Targeted Harassment Through Burdensome and Improper Discovery Tactics: Mr. Christian's demand for preservation of records predating Plaintiff's involvement by four years (Exhibit I) and his attempt to serve a formal discovery demand via social media demonstrate a clear intent to harass and burden a pro se litigant, rather than engage in legitimate discovery. Such tactics constitute an abuse of process.

The Calculated Campaign of Defamation: Mr. Christian's repeated, baseless, and defamatory labeling of Plaintiff as a "perpetrator" and "co-conspirator" in official bankruptcy court filings and correspondence (Exhibit H) is a direct assault on Plaintiff's credibility and an attempt to prejudice her ability to pursue her claims. These false statements, made by an officer of the court, erode the integrity of the judicial process and inflict tangible harm on Plaintiff's reputation.

The Opaque Withholding of Critical Evidence: The continued refusal to release the MMTLP Share Intel reports, crucial evidence for understanding the market manipulation, smacks of obstruction and further prejudices Plaintiff's ability to present her case effectively. This lack of transparency raises serious concerns about the fairness of the proceedings.

Retaliatory Threats of Litigation: Mr. Christian's history of issuing burdensome litigation hold notices and alluding to potential future legal action against Plaintiff appears to be a thinly veiled attempt to intimidate and silence her, directly interfering with her right to seek redress in this Court.

Ethical Violations Warranting Scrutiny: Plaintiff's formal complaint filed with the State Bar of Texas (Exhibit K) underscores the serious ethical concerns raised by Mr. Christian's conduct, further supporting the need for this Court's intervention to protect the integrity of the proceedings.

## III. ARGUMENT: THE COMPELLING NECESSITY FOR IMMEDIATE PROTECTIVE RELIEF UNDER RULE 26(C)

Irreparable Harm Absent a Protective Order: Without immediate intervention, Plaintiff faces the imminent threat of the misuse of privileged information obtained by Mr. Christian through his conflicted representations. She is also subjected to ongoing harassment, intimidation, and the damaging effects of defamatory statements, directly impeding her ability to litigate her claims fairly and causing irreparable harm to her reputation.

Clear "Good Cause" Under Rule 26(c): The confluence of Mr. Christian's inherent conflicts of interest, his demonstrated pattern of abusive litigation tactics, and his dissemination of defamatory falsehoods targeting Plaintiff constitutes the very definition of "good cause" under Rule 26(c). His conduct subjects Plaintiff to "annoyance, embarrassment, oppression, or undue burden or expense."

The Court's Inherent Power and Duty: This Court possesses not only the authority but the duty to safeguard the integrity of its proceedings and protect litigants from unethical and abusive conduct. The extraordinary circumstances presented by Mr. Christian's actions demand the exercise of this inherent power to ensure a just and impartial resolution. (See Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991)).

## IV. SPECIFIC AND ESSENTIAL RELIEF REQUESTED

To prevent irreparable harm, protect Plaintiff's fundamental rights, and uphold the integrity of these proceedings, Plaintiff Jennifer Vetrano respectfully and urgently requests that this Honorable Court enter a Protective Order with the following narrowly tailored and essential provisions:

a. Absolute Prohibition on Information Access, Use, and Disclosure: James Wes Christian shall be immediately and permanently prohibited from directly or indirectly accessing, using, or disclosing any information obtained through his representation of Flamethrower LLC., Meta Materials Bankruptcy, NBH, or any other related entity, where such information could be used in any manner adverse to Plaintiff in this or any related litigation. This prohibition extends to all categories of information, including but not limited to Share Intel data, Electronic Blue Sheet data, CAT data, NOBO/OBO lists, transactional logs, and all communications concerning Plaintiff.

b. Strict Restriction on Communication Regarding Plaintiff: James Wes Christian shall be strictly prohibited from communicating with any Defendant in this case, their counsel, or any third party regarding Plaintiff, except through formal discovery requests filed with this Court and served according to the Federal Rules of Civil Procedure, or during duly noticed court proceedings.

c. Mandatory Certification Under Oath: James Wes Christian shall be required to submit a sworn certification to this Court within seven (7) days of the entry of this Order, attesting that he has not disclosed any information obtained through his prior representations in a manner prejudicial to Plaintiff and affirming his unequivocal commitment to strictly comply with all terms of this Protective Order.

d. Immediate and Comprehensive Record Preservation Order: James Wes Christian shall be ordered to immediately preserve all records of his communications, access to information, and any documents related to MMTLP, NBH, and Flamethrower, LLC, and shall provide Plaintiff with a sworn affidavit detailing the steps taken to ensure such preservation.

e. Injunctive Relief Against Further Harassment and Retaliation: This Court shall enter a protective order specifically enjoining James Wes Christian and NBH from filing, threatening to

file, or otherwise pursuing any legal action against Plaintiff based on claims already referenced in Mr. Christian's correspondence or litigation hold materials.

f. Expedited Preservation and Production of Critical Documents: This Court shall order the immediate preservation and production to Plaintiff of all trading data, investigatory findings, Share Intel correspondence, NDAs, secrecy agreements, memoranda, invoices, draft or final reports, and all internal or external communications involving ATTAR, Kasowitz Benson Torres LLP, META, Flamethrower LLC, and any related agents or third parties involved in MMTLP or MMAT investigations. This information is crucial for Plaintiff to understand the underlying facts and fairly prosecute her claims.

g. Immediate Referral for Disciplinary Investigation: This Court shall immediately refer James Wes Christian to the relevant state disciplinary authority and/or this Court's internal ethics oversight for a thorough investigation into his potentially false statements made to the bankruptcy court, his apparent abuse of process and issuance of intimidating litigation threats against a pro se litigant, and his dissemination of defamatory statements against Plaintiff.

## V. CONCLUSION: URGENT ACTION REQUIRED TO PROTECT PLAINTIFF AND THE INTEGRITY OF JUSTICE

The compelling evidence presented herein demonstrates a clear and present danger to Plaintiff's ability to obtain a fair resolution of her claims and to the integrity of these proceedings. Mr. Christian's conflicted representations and his targeted campaign of harassment, intimidation, and defamation necessitate immediate intervention by this Court. Plaintiff Jennifer Vetrano respectfully and urgently requests that this Honorable Court grant the requested Emergency Motion for Protective Order in its entirety to prevent irreparable harm and ensure that justice is served.

Respectfully submitted,

/s/ Jennifer Vetrano

Jennifer Vetrano, Pro Se

25 Pond Hollow Lane
West Creek, NJ 08092
Email: jvetrano999@gmail.com
Phone: 908-783-0105

Date: May 8, 2025

## VI. CERTIFICATE OF SERVICE

As set forth in the Certificate of Service attached hereto, service has been duly made upon all known counsel of record.

/s/Jennifer Vetrano

Scan QR code to schedule a pickup

**hipments**

'or the letter rate, UPS Express® envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express envelopes items other than those listed or weighing more than 8 oz. will be billed by weight.

**al Shipments**

:press envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your 's classified as a document.

or the letter rate, the UPS Express envelope must weigh 8oz. or less. UPS express envelopes weighing more than 8 oz. will be billed by weight.

:xpress envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

JENNIFER VETRANO
(908) 783-0105
THE UPS STORE #0607
STE 35
287 ROUTE 72 W
MANAHAWKIN NJ 08050-2811

1.1 LBS PAK 1 OF 1
SHP WT: 2 LBS
DATE: 08 MAY 2025

'his envelope is for use wit

SHIP TO: CLERK, US DISTRICT CLERK
STE 222
200 E WALL ST

MIDLAND TX 79701-5201

Do n




UPS NEXT DAY AIR 1
TRACKING #: 1Z 0V1 9E0 01 8737 9027



BILLING: P/P

RECEIVED
MAY 08 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY CLERK

REF #2: 8874

REF #1: 8874

MH4NGUJOCOHK9 ISH 13.08C ZZP 450 16.5V 04/2025

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

CLERK, US DIS
200 E WAL
STE 222
MIDLAN

% Post-Consumer Content

nal Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions :d by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or ntion on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or vere exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

For information about UPS's pri practices or to opt out from the sa personal information, please see UPS Privacy Notice at www.ups

