**Exhibit L**

March 4, 2025

Via First Class Mail and Email

James Wes Christian Attar Law 1177 West Loop S, Ste 1700 Houston, TX 77027

**Re: Objection to Litigation Hold Notice Dated March 4, 2025 – MMTLP and Assertion of Rights Pursuant to Texas Rules of Civil Procedure**

Dear Mr. Christian,

This letter serves as both an acknowledgment of your litigation hold notice dated March 4, 2025, regarding MMTLP and a formal objection to the overly broad and burdensome nature of the requests contained therein. While I intend to comply with my obligations under Texas discovery rules, specifically Rules 192 and 196, I assert my rights to reasonable and proportional discovery, as well as protection from undue burden and harassment. I further object to any requests that violate my right to privacy or potentially infringe upon the First Amendment rights of others.

**Objections and Assertions:**

1. **Clarification of Status and Scope of Investigation:** I object to the vagueness of the litigation hold notice and demand clarification of my status within your investigation. A general demand for "all documents" without specifying the subject matter or timeframe is impermissibly broad and violates the principle of proportionality enshrined in Rule 192.3(a). *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 814, 820 (Tex. App.—Corpus Christi–Edinburg 2017, orig. proceeding) ("A request for 'all documents'…is overly broad."); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) (emphasizing the need for reasonable particularity in discovery requests); *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (holding that discovery requests must be reasonably tailored to the case). Furthermore, this broad demand fails to specify how the requested information is relevant to the subject matter of the litigation, as required by Rule 192.3(a).

2. **Objection to Extended Timeframe and Demand for Relevance:** I object to the request for records dating back to 2018 on the grounds of relevance and undue burden. As I acquired MMTLP shares in late 2022, the relevance of records from four years prior, when I had no involvement with the companies or individuals involved, is highly questionable. This request appears to be a fishing expedition, which is prohibited under Texas law. *See* Tex. R. Civ. P. 192.3(a) (requiring that discovery be relevant to the subject matter); *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (holding that discovery requests must be reasonably tailored); *Expeditors Int'l of Washington, Inc. v. Morales*, 387 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (emphasizing that the burden of demonstrating relevance rests on the party seeking discovery). This request also fails to consider the proportionality factors outlined in Rule 192.4, including the importance of the issues at stake, the amount in controversy, and the parties' relative access to relevant information.

3. **Objection to Vague Identification of Subject:** I object to the ambiguous phrase "relevant to the claim" and demand specific identification of the individual or entity to whom this refers. This lack of clarity violates the requirement for specific and particularized requests. *See* Tex. R. Civ. P. 192.3(b); *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex. 1989) (emphasizing the importance of specificity in discovery); *In re Am. Optical Corp. Prods. Liab. Litig.*, 165 S.W.3d 449, 454 (Tex. App.—Corpus Christi 2005, orig. proceeding) (holding that a request for "all documents relating to" a particular subject is overly broad). Specificity is essential to ensure that the responding party understands the scope of the request and can properly identify responsive information.

4. **Objection to Overbroad Social Media Request and Assertion of Privacy Rights:** The request for information from my social media accounts is overly broad and raises significant privacy concerns. I object to this request and assert my right to privacy under Texas law. *See* Tex. Const. art. I, § 19; *Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976) (recognizing a constitutional right to privacy); *Tex. State Employees Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987) (holding that privacy rights can limit discovery). I demand that you specify the exact information sought and demonstrate its relevance to the subject matter of the investigation, as well as its necessity to the case, outweighing my privacy interests. This request must be narrowly tailored to avoid intrusion into irrelevant or private matters.

5. **Objection to Potential Abuse of "Reports, Complaints, or Moderation Actions on X":** I object to the request for "reports, complaints, or moderation actions on X" as it could encompass information that is irrelevant, confidential, or protected by the First Amendment. I am particularly concerned that this request could be used to obtain information about individuals who have criticized Greg McCabe or Nextbridge Hydrocarbons, potentially chilling their free speech rights. *See* Tex. R. Civ. P. 192.6 (allowing for objections based on privilege and work product); *U.S. v. Alvarez*, 567 U.S. 709 (2012) (affirming First Amendment protection for speech); *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) (recognizing the importance of protecting online speech). This request must be carefully limited to avoid any infringement on protected speech.

6. **Objection to Vague Definition of "Activity Log":** I object to the undefined term "activity log" and demand a clear and unambiguous definition, including the specific types of activities and the timeframe involved. Vague and ambiguous terms are not permissible in discovery requests. *See* Tex. R. Civ. P. 192.3(b); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 578 (S.D. Tex. 2002) (stressing the need for clarity and precision in discovery requests). Without a clear definition, I cannot properly identify and produce responsive information.

7. **Objection to Undue Burden of Forensic Imaging:** I object to the request for "forensically qualified images" as it imposes an undue burden and expense on me, especially given my lack of technical expertise in this area. *See* Tex. R. Civ. P. 192.4 (allowing for objections based on undue burden and expense); *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 317 (Tex. 2009) (holding that discovery requests should not be unduly burdensome). I request that you provide detailed instructions and consider alternative methods of obtaining the information you seek, such as allowing me to provide specific documents or data instead of requiring a full forensic image.

8. **Objection to Overbroad Scope of Facebook Group Comments:** I object to the request for comments in the Next Bridge Hydrocarbons (MMTLP) Investors Group Facebook group as it is overly broad and potentially irrelevant. Please specify the individuals whose comments are sought and provide a rationale for their relevance to the investigation I am not sure if you want me to include all of this group's comments from what is believed to be influencers that are acting as proxies for Next Bridge Hydrocarbons or Greg McCabe. This request should be narrowly tailored to avoid encompassing irrelevant or private communications.
9. **Objection to Vague Request for Correspondence with Regulators:** I object to the vague request for correspondence with regulators and demand specific identification of the regulators and the subject matter of the correspondence. A general request is insufficient and violates the requirement for specificity. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 820; *In re Alford Chevrolet-Geo*, 997 S.W.2d at 181. Please clarify the scope of this request to ensure that it is reasonable and proportional.
10. **Objection to Potential Financial Burden:** As a pro se plaintiff in Case No. 7:24-CV-325, dealing with securities fraud and breach of fiduciary duties related to MMTLP, and as a single parent employed in multiple roles, I express concern regarding the potential financial burden associated with complying with this request. *See* Tex. R. Civ. P. 192.4 (allowing objections based on undue burden and expense); *In re Deere & Co.*, 299 S.W.3d 819, 821 (Tex. 2009) (recognizing that discovery costs can be a factor in determining proportionality). I request that you consider the proportionality factors in Rule 192.4 and limit the scope of your requests to avoid imposing an undue financial burden on me.
11. **Objection to Request for Information Requiring Technical Expertise:** I object to the request for information from "Access or Oracle database" as I lack the technical expertise to comply with requests for data in formats I do not understand. This request imposes an undue burden and expense on me, as I would need to hire an expert to assist me in retrieving this information. *See* Tex. R. Civ. P. 192.4. Please clarify the specific information you seek and consider alternative methods of obtaining it.
12. **Request for IT Assistance:** Given the technical nature of several requests, I request information regarding your firm's IT support resources. Discovery requests must be reasonable and should not require the responding party to possess specialized technical knowledge or incur significant expense.
13. **Objection to Vague Definition of "Audit Compliance":** I object to the undefined term "audit compliance" and demand a clear and unambiguous definition, including any applicable industry or regulatory standards. Without a clear definition, I cannot properly identify and produce responsive information.
14. **Objection to Potential Conflict of Interest and Retaliation:** I note that you, Mr. Christian, have worked with individuals named in my pro se lawsuit (Philippe Morali, Uzi Sasson, John Brda, Kenneth Hannah, and others) and have had access to "share intel" data for MMTLP. I am concerned that this litigation hold notice may be retaliatory and an attempt to intimidate me or interfere with my lawsuit. *See* Tex. R. Civ. P. 191.3 (prohibiting discovery abuse); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992) (recognizing the potential for discovery abuse). I request that you address this concern and assure me that this litigation hold notice is not being used for improper purposes.

15. **Objection to Overbroad Scope of X (formerly Twitter) Activity and Assertion of Privacy Rights:** I object to the overly broad request for a record of my activity on X (formerly Twitter), including participation in online spaces. This request raises significant privacy concerns and may encompass irrelevant or private communications. Please specify the specific information you seek and demonstrate its relevance to the investigation. I also reiterate my concern about the potential for this request to be used to identify and retaliate against individuals who have criticized Greg McCabe or Nextbridge Hydrocarbons. To avoid undue burden and protect my privacy interests, I request that your firm subpoena X for a complete record of the specific information you require.

**Additional Information:**

Furthermore, I draw your attention to the formal books and records request served upon Greg McCabe by eight Next bridge Hydrocarbons shareholders on November 18, 2024, and emailed on November 9, 2024. I also note the change of Next bridge Hydrocarbons' corporate headquarters and the delayed public announcement of this change. Greg McCabe did not comply with the formal books and record request from myself and other shareholders, his investor relations department referred me to the website in a vague email. Next Bridge Hydrocarbons has not produced a shareholder investor presentation, or a shareholder call ever.

As a pro se plaintiff in Case No. 7:24-CV-325, I intend to adhere to all applicable court rules. However, I perceive this litigation hold notice as potentially intimidating and disruptive to my ongoing legal proceedings.

I request that you provide responses to the above inquiries by March 28, 2025. In the meantime, I will preserve all data for the future.

Sincerely,

Jennifer Vetrano,

Pro Se Plaintiff, Case Number 7:24-CV-325

25 Pond Hollow Lane, West Creek, NJ 08092

March 14, 2025

Via First-Class Mail and Email

James Wes Christian

Christian Attar Law

1177 West Loop S, Ste 1700

Houston, TX 77027

Dear Mr. Christian and Next bridge Hydrocarbons,

Re: Your February 28, 2025 Litigation Hold Notice – MMTLP

I am writing to confirm receipt of your records hold notice dated March 4, 2025. I am currently reviewing your request and will take the necessary steps to comply with Texas discovery rules. However, I have several questions regarding this notice that I hope you can clarify:

1. What is my status in your investigation?

2. Why are you requesting records from me dating back to 2018? I only purchased MMTLP in late 2022, and I was not aware of Greg McCabe or Next bridge Hydrocarbons at that time. This request seems excessive.

3. Are you referring to Greg McCabe or Next bridge Hydrocarbons when you mention documents "relevant to the claim"?

4. What specific information do you need from my social media accounts?

5. Your request for reports, complaints, or moderation actions on X—does this include instances of harassment, cyberbullying, and sexually explicit memes directed at me by social media influencers associated with Greg McCabe and Next bridge Hydrocarbons?

6. What is meant by an activity log?

7. How should I obtain forensically qualified images? I am unfamiliar with this process.

8. Should I include all Facebook groups where I have commented that involve "rising star contributors" acting as proxies for Greg McCabe and Next bridge Hydrocarbons?

9. What types of correspondence are you seeking with regulators? Are you referring to Congress, attorney generals, or investigators? Please clarify.

10. As I am representing myself in a pro se case related to securities fraud and breach of fiduciary duties concerning MMTLP stock, and as a single mother working three jobs, why should I incur any costs associated with your investigation? How would I manage this?

11. What is an Access or Oracle database? I am not familiar with these terms.

12. I am willing to cooperate, but I do not understand many of the terms in your letter or how to retrieve the requested information. Does your law firm have an IT department that can assist?

13. What does audit compliance mean? Is there a specific standard I should be aware of?

14. I have recently completed the serving process for my pro se lawsuit against Philippe Morali, Uzi Sasson, John Brda, and Kenneth Hannah, and I am awaiting service for six additional defendants. Given your previous work with these individuals regarding share intel, I feel intimidated by your actions, which seem retaliatory in nature concerning my legal case that directly mentions you and your possession of share intel data relevant to 65,000 MMTLP holders (now Next bridge Hydrocarbons).

15. Would you like me to provide details of all the spaces I attended on X, including one where you, Mr. Christian, answered questions about your share intel data investigation with MMAT and MMTLP stock alongside "JunkSavvy," an influencer who acts as a proxy for Greg McCabe and Next bridge? She has a significant following and has hosted extensive discussions about MMTLP and Next bridge, claiming to work with them. Here is a link to a website showcasing that Twitter space: [MMTLP Resources] (https://mmtlpresources.com/news/wes-christian-gives-motherload-update/). I am unsure of all the spaces I participated in, especially as I may have been under the influence at times. Please consider subpoenaing X for this information.

Additionally, please review the formal books and records request served by eight Next bridge Hydrocarbons shareholders to your client, Greg McCabe, on November 18, 2024, and emailed on November 9, 2024. It is important to note that shareholders discovered the corporate headquarters of Next bridge Hydrocarbons had moved from 6300 Ridglea Place, Suite 950, Fort Worth, TX 76116, to 500 West Texas Avenue, Suite 890, Midland, TX 79701, without notifying shareholders until after the process server located Greg McCabe at the new address. This was disclosed in a press release dated November 25, 2024. To date, Greg McCabe has not responded to my inquiries or provided any investor presentations or calls since the company's formation in August 2021.

I am currently a Pro Se Plaintiff in case number 7:24-CV-325. I will adhere to the court's rules, but I feel that this situation is being used as an intimidation tactic to silence me and create stress regarding my ongoing case against your past and possibly current clients. I request that you address my questions by March 28, 2025.

Sincerely,

Jennifer Vetrano

Pro Se Plaintiff, Case Number 7:24-CV-325

25 Pond Hollow Lane

West Creek, NJ 08092

# Jennifer Vetrano

| | |
|---|---|
| **From:** | Jennifer Vetrano |
| **Sent:** | Saturday, November 9, 2024 12:46 PM |
| **To:** | gregmccabe@aol.com; nextbridgehydrocarbons@dennardlascar.com |
| **Cc:** | ast@equiniti.com; rj.desilva@rcc.texas.gov; ryan.fox@mail.house.gov; zach_McCue@booker.senate.gov |
| **Subject:** | Nextbridge Hydrocarbons-NJ shareholder |
| **Attachments:** | Letter.docx |

Mr. Greg McCabe,

Please see the attached letter.  Thank you.

*Jennifer Vetrano*

*From the Desk of:*
Ms. Jennifer Vetrano
25 Pond Hollow Lane
West Creek, NJ 08092

08 November 2024

**TO:** Mr. Greg McCabe et al, Next Bridge Hydrocarbons, 6300 Ridglea Place, Suite 950, Fort Worth, TX 76116.

**SUBJECT:** Next Bridge Hydrocarbons (NBH) Shareholder Request for Information (RFI) from Jennifer Vetrano (Fidelity 893 Shares).

## 1. BACKGROUND

On December 9, 2022, FINRA issued a U3 halt on Meta Materials Series A Preferred Stock (MMTLP), suspending trading due to an "extraordinary event." This decision prevented trading before the stock's planned delisting and conversion into private shares, leading to investor concerns about transparency and accountability. To date, and to my knowledge, no resolution or financial remedy has been actioned to address the shareholder impact.

## 2. PURPOSE

Under Texas law, shareholders have a right to request information from companies, especially in cases where corporate actions or inactions appear detrimental to shareholder value. Section 21.218 of the Texas Business Organizations Code specifically entitles shareholders to access company records to investigate possible misconduct, assess management practices, and protect investments.

## 3. DUTIES & RESPONSIBILITIES

Directors and officers of private companies must uphold fiduciary duties of loyalty, care, and good faith, acting in shareholders' best interests without conflicts of interest. Texas law, reinforced by federal securities regulations (e.g., the Securities Act of 1933), supports these obligations. As a shareholder, I am requesting access to information and documents to verify NBH's adherence to these fiduciary responsibilities.

## 4. RIGHTS FOR DISCOVERY

Texas law, specifically Texas Business Organizations Code Section 21.218, provides shareholders with the right to access company records to investigate potential mismanagement or

1

**SUBJECT:** Next Bridge Hydrocarbons (NBH) Shareholder Request for Information (RFI) from Jennifer Vetrano (Fidelity 893 Shares).

misconduct. Additionally, SEC Rule 10b-5 under the Securities Exchange Act of 1934 supports transparency, allowing shareholders to use such records to assess any potential fraud or negligence. Based on this legal framework, I request the following information and documents to evaluate NBH's recent actions and corporate governance.

## 5. REQUEST FOR INFORMATION

Please provide a response to the following questions and requests for documentation within **14 calendar days** of receipt of this memorandum.

### Question 1

Has the transfer agent, American Stock Transfer & Trust Company (now Equiniti), confirmed to NBH that all 165 million shares of NBH (formerly MMTLP) have been delivered, transferred, and recorded under the names of rightful shareholders?

1. **Verification of Delivery**: If all shares have been delivered and recorded, on what date did NBH confirm this?
2. **Share Count Status**: If Equiniti has not confirmed that all 165 million shares are accounted for and assigned to shareholders, what is the total number of shares that have been delivered to date?
3. **Response to Potential Naked Short Selling**: Shareholders whose shares have not been accounted for by Equiniti may have received unregistered shares (potentially indicating "naked short selling"). What is NBH doing to resolve any discrepancies in share counts across broker-dealers such as Robinhood, Webull, E*TRADE, and others?
4. **Identification of Beneficial Owners**: What steps are being taken to identify any shareholders with broker-dealer accounts that may hold unaccounted shares? Is NBH considering further stock dilution to resolve any outstanding share imbalance?
5. **Remedial Actions**: If shares cannot be provided to certain shareholders due to all shares being accounted for by Equiniti, what legal or financial remedies is NBH exploring to resolve this issue?
6. **Supporting Documentation**: Please provide all public records and business documents that substantiate your responses to these questions.

### Question 2

The NBH website advises that shareholder registration with Equiniti is currently optional. Please clarify:

1. **Rationale for SEC Involvement**: Why was the S-1 filing for the formation of Newco withdrawn at the SEC's request, and what led to this decision?
2. **Status of Newco Subsidiary**: What is the status of the Newco subsidiary? Are there plans to revisit or refile the S-1?
3. **Impact on Shareholder Value**: How does the delay in creating this subsidiary affect shareholder investments, particularly concerning assets like the Orogrande Prospect?

2

**SUBJECT:** Next Bridge Hydrocarbons (NBH) Shareholder Request for Information (RFI) from Jennifer Vetrano (Fidelity 893 Shares).

4. **Optional Registration:** Why is registration with Equiniti Trust Co. optional, and what advantages or disadvantages exist for shareholders in choosing this option?
5. **Future Registration Triggers:** What specific event or timeline would necessitate a shift to mandatory registration with Equiniti?
6. **Direct Registration Benefits:** How does direct registration compare with registering with Equiniti in terms of shareholder protections, liquidity, and ease of transfer?
7. **Strategic Changes and Subsidiary Plans:** Have there been strategic changes affecting the formation of Newco or any dividends? If so, what is the revised plan for NBH's assets, and how does this impact shareholders?
8. **Documentation:** Please provide all public records and business documents that substantiate your responses to these questions.

## Question 3

NBH recently lost its lease to the "University Lands" related to the Orogrande asset. This decision could significantly impact company operations and revenue. Please address the following:

1. **Reason for Lease Termination:** Why did the University Lands System choose not to renew the lease? Were there proposals offered by NBH to maintain the agreement?
2. **Alternative Revenue Sources:** What specific steps is NBH taking to secure alternative sources of revenue to mitigate this asset loss?
3. **Impact on Strategy:** Will the loss of Orogrande impact NBH's strategic direction or planned investments?
4. **Short-Term Financial Impacts:** How does the current financial outlook reflect the loss of this asset, and what are the anticipated impacts on shareholder value?
5. **Documentation:** Please provide all public records and business documents that substantiate your responses to these questions.

## Question 4

NBH recently signed a Letter of Intent to acquire a 40% interest in the Louisiana Heritage Play (LHP) from McCabe Petroleum Corporation. Please clarify:

1. **Conflict of Interest:** Does acquiring LHP from McCabe Petroleum Corporation, given Mr. McCabe's role as NBH's Chairman of the Board, present any conflicts of interest?
2. **Synergies and Strategic Fit:** What specific synergies are expected from acquiring the Louisiana Heritage Play, and how does this acquisition align with NBH's long-term goals?
3. **Financial Risks:** What shareholder benefit and financial risks are associated with the Louisiana play?
4. **Documentation:** Please provide all public records and business documents that substantiate your responses to these questions.

3

**SUBJECT:** Next Bridge Hydrocarbons (NBH) Shareholder Request for Information (RFI) from Jennifer Vetrano (Fidelity 893 Shares).

**Question 5**

In August 2023, NBH secured a $2 million loan from CAPCO Holding Inc., owned by Clinton Plant, at a 12% interest rate with an additional 250,000 stock options as collateral. Mr. Plant also secured a $10,000 per month consulting role. Please address the following:

1. **Justification for the Loan Terms:** What rationale and justification did NBH use to accept this loan and its terms, given the higher-than-average interest rate?
2. **Independent Oversight:** Was this loan arrangement reviewed by an independent board or financial advisor to prioritize shareholder interests?
3. **Alternative Financing Considered:** Were other lending institutions or terms considered?
4. **Consulting Services Provided:** What specific consulting services is Mr. Plant providing, and how do these services align with NBH's strategic goals?
5. **Documentation:** Please provide all public records and business documents that substantiate your responses to these questions.

---

## 6. DISCLAIMER

This memorandum is being sent both via registered US Mail and digitally to your official email addresses. Please confirm receipt via email immediately. Failure to acknowledge and/or respond fully within **14 calendar days** will prompt a formal demand letter and may lead to further action as outlined by Texas and federal law.

## 7. POINT OF CONTACT

For any questions or clarifications, please contact:
**Jennifer Vetrano**
**Phone:** (908) 783-0105
**Email:** jvetrano999@gmail.com

                                        **Jennifer Vetrano**
                                        Next Bridge Hydrocarbons Shareholder

**November 18, 2024**

Greg McCabe
Chairman of the Board
Next Bridge Hydrocarbons
6300 Ridglea Place, Suite 950
Fort Worth, TX 76116

**Subject:** Formal Request for Access to Books and Records Pursuant to Texas Business Organizations Code Section 21.218

Dear Mr. McCabe,

We, as a group of shareholders of Next Bridge Hydrocarbons ("NBH"), formally invoke our rights under **Section 21.218 of the Texas Business Organizations Code** to request access to specific books and records of NBH. This request is made in good faith for the legitimate purpose of investigating potential mismanagement, breaches of fiduciary duty, and actions that may have detrimentally affected shareholder value.

## Requested Documents and Records

### 1. Board and Management Communications

a. Board meeting minutes, resolutions, and presentations related to:
i. The reverse merger between Torchlight Energy and Meta Materials.
ii. The spin-out of oil and gas assets into NBH.
b. Internal communications, including emails, exchanged between board members and executive officers including but not limited to yourself, John Brda, George Palikaras and Clifton DuBose regarding these transactions.

### 2. Financial Records

a. Audited financial statements and annual reports for the preceding two fiscal years.
b. Documentation regarding stock issuances and allocations associated with the spin-out of NBH.

### 3. Consulting and Employment Agreements

a. Contracts or consulting agreements involving yourself, John Brda, George Palikaras, Clifton DuBose, Rich Masterson, Clinton Plant or any and all other executives with Torchlight, Meta Materials, or NBH, including terms of compensation and delineation of responsibilities.

**4. Lease and Asset Records**

a. Documentation and communications related to the loss of the University Lands lease, including:

1. Specific reasons for any missed payment or non-compliance with lease terms.

2. Internal correspondence or board discussions addressing risks to the lease.

3. Proposals or remedial actions considered to prevent termination.

4. Financial statements or cash flow records from the relevant period reflecting the company's ability (or inability) to meet payment obligations.

5. Agreements and due diligence materials related to the acquisition of the Louisiana Heritage Play, including any disclosures of conflicts of interest.

6. The exact locations, names, and production outputs of McCabe Petroleum Company's wells in Louisiana.

**5. Shareholder Records**

a. Records identifying individuals or entities that approached NBH to acquire shares, including details of initial approaches and subsequent negotiations.
b. Names and contact details of third parties expressing interest in purchasing NBH shares.
c. Summaries or descriptions of discussions or communications with third parties, including:

1. Meeting dates and locations.
2. Correspondence or exchanged documents (verbal or written).
3. Participants in these discussions, including, but not limited to any and all board members or executives.
4. Resolutions, agreements, or decisions made as a result of these discussions.
5. Verification of share counts and allocation records, including documentation addressing potential naked short selling or unregistered shares.

**6. SEC Filings and Withdrawals**

a. Correspondence and drafts associated with the withdrawn S-1 filing for Newco.
b. Documents detailing changes in strategy or corporate governance tied to Newco's postponement or abandonment.

**7. Non-Disclosure Agreements and Related By-Laws**

a. We request copies of any and all Non-Disclosure Agreements, Non-Compete/Non-Disclosure Agreements, Secrecy Agreements, any similar agreements relevant to NBH operations or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of NBH with any and all party or parties since the inception of NBH.

b. We request copies of any and all Non-Disclosure Agreements, Non-Compete/ Non-Disclosure Agreements, Secrecy Agreements, any similar agreements relevant to NBH operations or any reasonable facsimile thereof signed by you or any duly authorized officer or employee of any company, business, or partnership you owned in whole or in part, or were an officer thereof, with any and all party or parties, if said agreements as delineated in the foregoing carried over into NBH operations, support operations, social media campaigns, or other efforts.

c. We request you identify with particularity by name of the party and date of agreement any payment, compensation agreement, share distribution agreement, contract for shares or warrants in NBH or any other company, business, or investment for specific performance of work of any kind to individuals, entities, businesses, lobbyists, or social media influencer.

## Detailed Explanation for Non-Compliance

If any requested documents are not provided, please include a comprehensive explanation for their unavailability or refusal to disclose.

## Summary of Requested Items (Checklist)

- Board and management communications.
- Audited financial statements and stock issuance documentation.
- Consulting and employment agreements.
- Lease and assets records.
- Shareholder records and share count verification.
- Correspondence related to SEC filings and withdrawals.
- NDAs and by-laws.

## Deadline for Compliance

In light of the urgency of this matter, I respectfully request the aforementioned documents be made available within **three (3) business days** of receipt of this correspondence. Should additional time be needed, please provide a detailed justification and a proposed timeline for compliance.

## Consequences of Non-Compliance

Failure to comply may result in legal remedies, including filing a petition to compel disclosure in accordance with Texas law.

## Point of Contact

For inquiries, please contact:
**Danielle Spears**
Phone: 480-476-1091
Email: paymmtlpnow@gmail.com

Please confirm receipt of this correspondence.

Sincerely,

*Signed by:* Danielle Spears                                    11/17/2024

**Danielle Spears**
Along with all undersigned shareholders.

*DocuSigned by:* Contique Willcot

*Signed by:* Marcos Montiero

*DocuSigned by:* Dan Auxier

*DocuSigned by:* Matthew Pease

*Signed by:* Jason Rolo

*Signed by:* Scott Traudt

*Signed by:* Jennifer Vetrano