IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN TEXAS
MIDLAND-ODESSA DIVISION

FILED
AUG 20 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

JENNIFER VETRANO,
*Plaintiff*

v.

JOHN BRDA,
ALLISON CHRISTILAW, MBA, ICD.D B,
JOHN R. HARDING, UZI SASSON,
DAN EATON ESQ, MAURICE GUITTON,
ERIC M. LESLIE, PHILIPPE MORALI,
KEN HANNAH, STEEN KARSBO,
JOHN DOES 1-20, JANE DOES 1-20
*Defendants*.

Case No.: 7:24-CV-00325-DC-RCG

**MOTION TO SUPPLEMENT THE RECORD WITH EVIDENCE OF INSIDER ENRICHMENT, BOARD COMPENSATION, AND FIDUCIARY BREACHES**

TO THE HONORABLE JUDGE COUNTS:

Plaintiff Jennifer Vetrano, a shareholder of Next Bridge Hydrocarbons—**a Texas-incorporated company formed through the spin-off of MMTLP shares issued by Meta Materials Inc.**—respectfully moves to supplement the record with newly disclosed evidence from Meta's Chapter 7 bankruptcy filing (Case No. 24-50792, District of Nevada). This evidence reveals a pattern of

insider enrichment, excessive board compensation, and calculated concealment by the Meta Board of Directors and executive officers, including Uzi Sasson and Dan Eaton.

## II. INSIDER ENRICHMENT AND EXECUTIVE PAYMENTS

Exhibit A page 2, The Statement of Financial Affairs (SOFA) filed on August 9, 2024, discloses that:

- A. **Uzi Sasson, Meta's CEO, received a total of $689,745.31 (Exhibit B, Pg 20)**, including:
    - a. $100,000 consulting agreement on August 7, 2024.
    - b. $301,320.18 in salary, severance, and vacation cash-out on August 8, 2024
- B. **Dan Eaton, Chief Legal Officer, received $505,095.28 (Exhibit B, Pg 20)**, including:
    - a. $100,000 consulting agreement on August 7, 2024
    - b. $205,047.00 in salary, severance, and vacation cash-out on August 8, 2024

## III. BOARD COMPENSATION AND FIDUCIARY BREACH

The Meta Board paid itself over $400,000 in director fees in the year preceding bankruptcy (Exhibit B pg. 10-13) including John R. Harding: $113,333.33, Ken Hannah: $93,333.33, Karsbo Consulting (Steen Karsbo): $86,766.67, Allison Christilaw: $60,625.46, Philippe Morali: $40,979.67, Eric Leslie: $8,058.14.

The board compensation was issued during a period when Meta Materials Inc. was discreetly divesting core assets—an act widely viewed by shareholders of Meta and Next Bridge Hydrocarbons as a "fire sale" conducted without notice, consent, or transparency. These payouts were executed within 48 hours of Meta's bankruptcy filing, even as Next Bridge Hydrocarbons

shareholders remain denied access to liquidity and continue to face unanswered books and records requests.

## IV. QUESTIONABLE CONSULTING PAYMENTS

Two entities received large, unexplained payments immediately before the Meta bankruptcy Exhibit A, page 2:

> **A. Bdalcom LLC: $100,000 on August 8, 2024, labeled "Consulting," with no description of services or relationship to Meta. "FOR THE BENEFIT OF UZI SASSON."**
>
> **B. E10 Consulting LLC: $120,838.06 on August 7, 2024, labeled "Service," with no supporting documentation. "FOR THE BENEFIT OF DAN EATON."**

These transactions appear to be last-minute insider enrichments lacking transparency, fair value, or board oversight.

## V. LEGAL BASIS FOR SUPPLEMENTATION

Under Texas Business Organizations Code § 21.418 and Nevada Revised Statutes § 78.138, directors and officers owe duties of loyalty and care. The timing, magnitude, and concealment of these payments constitute breaches of fiduciary duty and may qualify as fraudulent transfers under 11 U.S.C. § 548.

Plaintiff asserts standing as a shareholder of Next Bridge Hydrocarbons, whose shares were issued via Meta's spin-off of MMTLP. The same individuals who structured that spin-off—including John Brda and the named Meta Materials Inc. Board of Directors never took any

initiative to help Next Bridge Hydrocarbon shareholders, simultaneously enriched themselves and abandoned shareholder protections.

Uzi Sasson's conduct in the Meta Materials bankruptcy is not an isolated lapse—it is part of a demonstrable and repeated pattern of self-dealing and fiduciary breach that has already been litigated in federal court with a different company (Exhibit C page 3, 4, 5-8). In Franchi v. IXYS Corporation et al., Sasson was named as a defendant for orchestrating a merger with Littelfuse, Inc. that enriched insiders while depriving shareholders of critical information. On the very day IXYS entered into the merger agreement, Sasson executed amended employment contracts that entitled him to inflated salaries, performance bonuses, and lucrative "change in control" payouts upon termination. Yet the Registration Statement filed with the SEC omitted any disclosure of the purpose, timing, or substance of those amendments, including who proposed them, when they were negotiated, and who participated in those discussions. This concealment violated Sections 14(a) and 20(a) of the Exchange Act and obstructed shareholders' ability to assess the fairness of the transaction. That same blueprint of insider enrichment and opacity has now reemerged in Meta's Chapter 7 bankruptcy: Sasson paid himself nearly $690,000, including a $100,000 consulting fee executed one day before filing—while shareholders of Next Bridge Hydrocarbons remain locked out of liquidity and denied access to corporate records. The timing, structure, and concealment of these payouts reflect a calculated pattern of behavior: Sasson repeatedly exploits corporate transitions to enrich himself, while withholding material information from shareholders and evading accountability. The court should view his conduct not as circumstantial, but as systemic—and act accordingly.

On January 6, 2017, the U.S. Securities and Exchange Commission (SEC) issued a formal comment letter (Exhibit E page 1-2) to Uzi Sasson, then President and Chief Financial Officer of

IXYS Corporation, demanding clarification of undisclosed business contacts with Syria and Sudan—both designated by the U.S. State Department as state sponsors of terrorism. The SEC cited IXYS's Form 10-K disclosures, which referenced operations in the Middle East and listed a distributor in North Africa, yet omitted any mention of Syria or Sudan despite public evidence that IXYS products were marketed in those jurisdictions. The Commission required Sasson to disclose whether IXYS engaged in direct or indirect dealings with these sanctioned nations, including through subsidiaries, distributors, or affiliates, and to quantify any related revenues, assets, or liabilities. The inquiry further compelled Sasson to address reputational and investment risks and to affirm the company's responsibility for the accuracy and adequacy of its disclosures. This documented regulatory scrutiny is not merely historical—it is probative of a sustained pattern of concealment, evasive disclosure, and disregard for shareholder transparency under Sasson's leadership. Under Federal Rule of Evidence 404(b), this prior SEC engagement is admissible to demonstrate motive, intent, knowledge, and absence of mistake, particularly in light of Sasson's recent conduct at Meta Materials Inc., where he authorized nearly $690,000 in insider payments, including a $100,000 consulting fee one day prior to bankruptcy, while shareholders of Next Bridge Hydrocarbons were denied access to records, liquidity, and material facts. Courts have consistently held that fiduciary breaches involving nondisclosure and self-dealing are actionable when they reflect a pattern of misconduct. See Eccles v. Shamrock Capital Advisors, LLC, 2024 NY Slip Op 02841 (holding directors liable for promoting personal interests and concealing material facts); SEC v. Private Advisor Group, LLC, Admin. Proc. File No. 3-20933 (2022) (imposing penalties for undisclosed conflicts and fiduciary breach). Sasson's regulatory history and current conduct form a coherent and admissible narrative of fiduciary failure, warranting judicial intervention and evidentiary supplementation.

On August 7, 2023, Meta Materials Inc. executed a Loan Sale Agreement transferring approximately $24 million in promissory notes—originally issued by Next Bridge Hydrocarbons—to Gregory McCabe, a corporate insider (now Chairman and Chief Executive Officer of Next Bridge Hydrocarbons), at a substantial and undisclosed discount. This transaction was orchestrated under the leadership of Chairman Jack Harding, who had just approved Meta's Realignment and Consolidation Plan in June 2023, and CFO Uzi Sasson, whose financial oversight responsibilities included debt instruments, asset transfers, and disclosures. The deal also included the transfer of Meta's lien on 25% of the Orogrande Prospect, Next Bridge's most valuable oil and gas asset, effectively stripping public shareholders of collateral leverage while consolidating control in McCabe's hands. Notably, this insider transaction was executed without shareholder approval, without public valuation methodology, and without disclosure of the discount terms—despite its material impact on shareholder equity and asset control. The timing coincided with Meta's announcement of a $282 million goodwill impairment and $293 million net loss, suggesting a strategic offloading of liabilities while insiders enriched themselves. McCabe subsequently amended the loan agreement to extend maturity and reinforce his financial leverage over Next Bridge's operations. The roles of Harding and Sasson in authorizing and executing this transaction—combined with their fiduciary positions and prior patterns of concealment—demonstrate a calculated breach of duty, executed under the guise of corporate restructuring but designed to benefit insiders at the direct expense of shareholders. The Court should view this transaction not as routine corporate housekeeping, but as a deliberate act of self-dealing, asset diversion, and fiduciary misconduct warranting judicial scrutiny and equitable remedy. In Exhibit D, George Palikaris, Founder of Meta Materials discusses this situation in a X post with Aaron Chow from (Elephant Analytics) and he says that "$MMAT

Shareholders should be addressing this topic specifically to Jack & Uzi in writing, preferably with a demand letter." He also goes on to say "WHY did this deal get materially changed by them AFTER I was out.... And in exchange for WHAT?"

## VI. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

A. Accept this motion and the attached Statement of Financial Affairs as supplemental evidence.

B. Take judicial notice of Meta Materials Inc.'s bankruptcy filings (Case No. 24-50792).

C. Authorize shareholder examination under TBOC § 21.218 and NRS § 78.257.

D. Order preservation and production of communications between Meta's directors, officers, John Brda, and affiliated entities.

Grant any further relief deemed just and proper.

Respectfully submitted,

Jennifer Vetrano

Pro Se Plaintiff

/s/ Jennifer Vetrano


Jennifer Vetrano

25 Pond Hollow Lane

West Creek, NJ 08092

Pro Se Plaintiff

Email: jvetrano999@gmail.com

Phone: 908-783-0105

No Fax Number

CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2025, I served a true and correct copy of the foregoing Motion to Enter New Evidence on all Defendants and/or their counsel of record via email.

Dated: August 19, 2025

/s/ Jennifer Vetrano

Jennifer Vetrano

Pro Se Plaintiff



e may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your document.

e, the UPS Express envelope must weigh 8oz. or less. UPS express envelopes weighing more than 8 oz. will be billed by weight.

es are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

This envelope is for use with

Do not

Contents should be packed to ensure safe transportation.

er Content